O. D. BRATTON AND DOROTHY BRATTON, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 60092, 60093, 60105, 60112, 60113. Filed January 29, 1959.

---

[1] Proceedings of the following petitioners are consolidated herewith: J. Ross Holcomb, Jr., Docket No. 60093; Frank A. Conkling and Eula W. Conkling, Docket No. 60105; James A. Holcomb and Lou H. Holcomb, Docket No. 60112; Nola D. Holcomb, Docket No. 60113.

*John J. Doggett, Jr., Esq., Hubert A. McBride, Esq.,* and *Lowell W. Taylor, Esq.,* for the petitioners.

*Homer F. Benson, Esq.,* for the respondent.

TIETJENS, *Judge:* These consolidated proceedings involve deficiencies in income tax and additions thereto in the amounts and for the years as set forth below:

| Docket No. | Year | Petitioner | Deficiency | Addition to tax, sec. 294(d)(2) |
|---|---|---|---|---|
| 60092 | 1952 | O. D. and Dorothy Bratton | $14,015.39 | |
| | 1953 | O. D. and Dorothy Bratton | 4,856.90 | $508.98 |
| 60093 | 1952 | J. Ross Holcomb, Jr | 8,054.09 | |
| | 1953 | J. Ross Holcomb, Jr | 207.25 | |
| 60105 | 1952 | Frank A. and Eula W. Conkling | 17,913.44 | |
| | 1953 | Frank A. and Eula W. Conkling | 4,400.22 | |
| 60112 | 1952 | James A. and Lou H. Holcomb | 4,229.16 | |
| | 1953 | James A. and Lou H. Holcomb | 124.88 | |
| 60113 | 1952 | Nola D. Holcomb | 4,168.91 | 265.49 |
| | 1953 | Nola D. Holcomb | 104.18 | |

By amended answer respondent, pleading in the alternative, claimed increased deficiencies in each of the above proceedings and an increased addition to tax under section 294(d)(2) in Docket No. 60113 for 1952; and further, by way of a second alternative, claimed increased deficiencies in each of the above proceedings and an increased addition to tax under section 294(d)(2) in Docket No. 60092 for 1953.

The issue for decision is the proper tax consequences of certain transactions undertaken in carrying out the liquidation of a corporation, primarily being whether the fair market value of certain purchase money notes taken by the corporation for the sale of assets and transferred to a bank as pledges in satisfaction of indebtedness owed by the corporation to its stockholders, is income to the stockholder-creditors in the year the sale was consummated.

### FINDINGS OF FACT.

O. D. and Dorothy Bratton, husband and wife, resided in Memphis, Tennessee, during the taxable years 1952 and 1953, and filed joint Federal income tax returns for those years with the director of internal revenue for the district of Tennessee.

J. Ross Holcomb, Jr., resided in Memphis, Tennessee, during the taxable years 1952 and 1953, and filed individual Federal income

tax returns for those years with the director of internal revenue for the district of Tennessee.

Frank A. and Eula W. Conkling, husband and wife, resided in Memphis, Tennessee, during the taxable years 1952 and 1953, and filed joint Federal income tax returns for those years with the director of internal revenue for the district of Tennessee.

James A. and Lou H. Holcomb, husband and wife, resided in Chattanooga, Tennessee, during the taxable years 1952 and 1953, and filed joint Federal tax returns for those years with the director of internal revenue for the district of Tennessee.

Nola D. Holcomb resided in Memphis, Tennessee, during the taxable years 1952 and 1953, and filed individual Federal tax returns for those years with the director of internal revenue for the district of Tennessee.

Unless otherwise noted, each of the above individuals will hereinafter be referred to as the petitioners.

Hobac Veneer and Lumber Company (hereinafter referred to as Hobac), a Tennessee corporation, was engaged in the manufacture and sale of lumber and veneers. It maintained a plant and mill located at Carruthersville, Missouri, and owned certain timberlands. All its capital stock was owned equally by O. D. Bratton, J. Ross Holcomb, Sr., Frank A. Conkling, and James Ahern. J. Ross Holcomb, Sr., died prior to the years in issue, and his one-quarter interest in the business passed to his widow, Nola D. Holcomb, and his sons J. Ross Holcomb, Jr., and James A. Holcomb, petitioners herein.

Prior to the years in issue, Hobac secured from the Union Planters National Bank & Trust Company a loan of $200,000 which was secured by a mortgage upon its mill and timberlands. By December 1952, Hobac had reduced that indebtedness to $47,681.40.

Hobac, as of December 20, 1952, was indebted to its stockholders for commissions and salaries in the following amounts:

| Stockholder | Amount |
| --- | --- |
| J. Ross Holcomb, Sr., Estate | $38,691.10 |
| O. D. Bratton | 54,993.06 |
| Frank A. Conkling | 55,380.08 |
| James T. Ahern | 17,317.34 |

Each of those indebtednesses had been subordinated to the aforementioned loan.

Until his death, J. Ross Holcomb, Sr., had actively managed the affairs of Hobac. Thereafter, until 1952, the business was managed by James Ahern. At that time his own affairs prevented him from devoting sufficient time to his duties.

During 1951, Hobac lost money, and the Holcomb heirs became desirous of liquidating the business. On the other hand, Bratton and Conkling were undecided as to what should be done with the

corporation. Beginning in the summer of 1952, a series of conferences were held in an attempt to devise a means of liquidating the stockholders' interest in the most advantageous manner. Various proposals were submitted and rejected. As the largest creditor, Conkling was opposed to any plan which failed to equalize the debt due him with that of the other stockholder-creditors, or which might result in a substantial tax to the corporation and a further tax to him. Unsuccessful attempts were made to find a purchaser for all the corporation's outstanding stock. However, a purchaser was secured for the company's lumber inventory, and it was sold on September 13, 1952, by Hobac for $50,000.

Further negotiations took place as a result of which it was suggested that the mill be sold to E. L. Betz and Joseph Tipton on a long-term credit basis. Conkling was opposed to any such sale. To obtain his consent, the other stockholder-creditors agreed to an equalization of the indebtednesses then owed them by Hobac. After reciting that a decision to liquidate the company had been reached, pursuant to which Hobac had disposed of its lumber inventory and had agreed to sell its mill and related properties to Betz and Tipton in exchange for their notes, a mortgage upon the property and a purported pledge of collateral security with the Union Planters National Bank, and further reciting that as part of that plan Hobac's timberlands were to be distributed to its shareholders subject to a mortgage thereon in the amount of $47,681.40 in exchange for their stock, and that they had agreed to sell those lands to the Anderson-Tully Company for $290,000 less the mortgage indebtedness, the stockholders agreed that Anderson-Tully should pay the net proceeds of that sale to the Union Planters National Bank as their trustee in the following manner:

| | |
|---|---:|
| O. D. Bratton | $72,297.31 |
| Frank A. Conkling | 72,684.33 |
| Nola D. Holcomb | 18,665.12 |
| J. Ross Holcomb, Jr | 18,665.12 |
| James A. Holcomb | 18,665.12 |
| James T. Ahern | 34,621.60 |
| Expenses of sale | 6,720.00 |
| Total | 242,318.60 |

With the consent of its stockholders, Hobac, on December 18, 1952, sold its mill and related properties to Betz and Tipton in consideration for their long-term notes in the amount of $150,000, and their agreement by virtue of which they purported to assume Hobac's indebtedness to its stockholders in the amount of $166,381.58. To effectuate that sale, the notes were delivered, the property deeded to Betz and Tipton, and an agreement executed which, after reciting Hobac's indebtedness to its stockholders, provided in part as follows:

As a further consideration for the sale by Hobac to Betz and Tipton of the mill, lands and other physical properties and assets at the prices and upon the terms stated in the deeds, bill of sale and other instruments, Betz and Tipton hereby assume and agree to pay all the foregoing indebtednesses, with interest at the rate of three percent (3%) per annum, upon the express condition, however, that all amounts realized from the collection of the deferred purchase money notes and demand note given by Betz and Tipton as evidence of the deferred purchase price of the mill, lands, physical assets, etc., and all amounts realized from any foreclosure and sale under the trust deed given by Tipton and Betz to secure said deferred purchase money notes and demand note be applied to the payment and satisfaction of the foregoing indebtednesses, except such expenses as may necessarily be incurred in the handling and collection of said deferred purchase money and demand notes. And Betz and Tipton agree that the Union Planters National Bank, which will hold the deferred purchase money notes and demand note as collateral security, may pay from time to time, as requested by the above named creditors, any amounts it may have on hand representing payments of said deferred purchase money notes and demand note to said creditors, all said payments to be applied and credited on the deferred purchase money notes and demand note.

Appended to that document was the following agreement executed by Hobac's stockholder-creditors:

We, the undersigned, hereby consent to the foregoing agreement, and agree to and do hereby release Hobac Veneer and Lumber Company, Inc., from any additional or further liability to us upon the aforesaid indebtednesses, and agree to look to the collateral security hypothecated with Union Planters National Bank and to Ernest L. Betz and Joseph R. Tipton for the satisfaction and payment of said indebtednesses.

On December 20, 1952, Hobac sold its log and veneer inventories, along with other assets, to Betz and Tipton in return for their demand note in the amount of $55,729.79. Also on that day, a special meeting of its stockholders and directors was held, and it was resolved that the sale of its mill, millsite, equipment, inventories, and other assets, and the purported assumption of its indebtednesses to its stockholders by Betz and Tipton be approved and ratified, and further that the notes executed by Betz and Tipton together with the deed of trust securing them were to be pledged as collateral security for payment of Hobac's indebtednesses to its stockholders. Finally, it was resolved that:

BE IT FURTHER RESOLVED that the Company be liquidated and dissolved, and that all of the timber lands owned by the Company be conveyed to the stockholders of record in partial liquidation of their capital stock in the Company, and that the Officers and Directors proceed forthwith to complete the liquidation as speedily as possible by the sale and realization on all other assets of the Company and the payment of all the Company's liabilities not assumed by Betz-Tipton Veneer Company.

BE IT FURTHER RESOLVED that the attorney for the Company give notice to the Commissioner of Internal Revenue of the action this day taken as required by the Internal Revenue Laws.

Under date of December 20, 1952, Hobac distributed its timberlands to its stockholders. They immediately conveyed those lands to the

Anderson-Tully Lumber Company for $290,000. Anderson-Tully thereupon issued one check to the Union Planters National Bank in the amount of $47,681.40 extinguishing the balance owed by Hobac on its loan. It issued a second check, in the amount of $242,318.60, to Hobac's stockholders which was deposited with Union Planters as trustee in accordance with the equalization agreement.

Further, on December 20, 1952, Hobac, purporting to act as pledgor, executed an agreement with the Union Planters National Bank, whereby it purported to pledge the Betz-Tipton notes in the face amount of $205,729.79 with Union Planters to secure its indebtedness to its stockholder-creditors. The notes so pledged were described as follows:

36 promissory notes Nos. 1 to 36 inclusive, in amount of $1600.00 each, dated September 24, 1952, bearing interest at rate of 6% from maturity, said notes being payable monthly commencing April 1, 1953, to Hobac Veneer & Lumber Co., Inc., at Union Planters National Bank, Memphis, Tenn.;

57 promissory notes Nos. 37 to 93 inclusive, in amount of $1600.00 each, dated September 24, 1952, bearing interest at rate of 3% per annum from September 24, 1955, said notes being payable monthly commencing April 1, 1956, to Hobac Veneer & Lumber Co., Inc., at Union Planters National Bank, Memphis, Tenn.;

1 promissory note No. 94 in amount of $1200.00 dated September 24, 1952, bearing interest at rate of 3% per annum from September 24, 1955, said note being payable January 1, 1961, to Hobac Veneer & Lumber Co., Inc., at Union Planters National Bank, Memphis, Tenn.;

1 demand note for $55,729.79,
and
Trust deed of even date securing above notes.

The agreement provided that once Hobac's indebtedness to Union Planters National Bank had been liquidated, its stockholder-creditors had the right to declare any part of its indebtedness to them due and payable with the proviso that it might be deferred and paid in installments of $18,500 per year together with accrued interest. It further provided that the pledgee was authorized to receive payments on the notes, and was to hold the proceeds so collected as collateral security for the payment of the indebtedness secured. It was given the right to sue on the notes and to foreclose on the deed of trust securing such notes if necessary. The stockholder-creditors were given the right to look to the notes equally, and to demand that the pledgee proceed, either by suit on the notes or under the deed of trust, to secure their payment. A supplement to that agreement was executed by Hobac's stockholder-creditors on January 30, 1953, wherein they acknowledged the equalization of the indebtednesses owed them by Hobac, and recited them to be in the following amounts:

| | |
|---|---|
| O. D. Bratton | $41,595.40 |
| Frank A. Conkling and Frank A. Conkling Company | 41,595.40 |
| James T. Ahern | 41,595.40 |
| Nola D. Holcomb | 13,865.00 |
| J. Ross Holcomb, Jr | 13,865.00 |
| James A. Holcomb | 13,865.00 |

By letter, dated December 30, 1952, Union Planters National Bank was authorized and directed to pay to any of the stockholder-creditors on request any sums held by it and due them as their pro rata share of the proceeds of the Betz-Tipton notes held by it under the pledge agreement. Each of the notes has been paid as of its due date.

Hobac surrendered its corporate charter to the secretary of state for the State of Tennessee on October 1, 1953.

On their 1952 return the Brattons reported as ordinary income the sum of $13,397.66, representing the amount received by them by virtue of the equalization agreement. They reported as capital gains the sum of $53,365.90, representing the excess of the value of their interest in the timberlands over the basis of their stock. All the amounts received by them during 1953, 1954, 1955, and 1956 under the so-called pledge agreement were reported as ordinary income.

On their 1952 return the Conklings reported as ordinary income the sum of $13,784.68, representing the amount received by them by virtue of the equalization agreement. They reported as capital gains the sum of $53,365.90, representing the excess of the value of their interest in the timberlands over the basis of their Hobac stock. The amounts received by them during 1953, 1954, 1955, and 1956 under the so-called pledge agreement were reported as ordinary income.

The indebtednesses owed J. Ross Holcomb, Sr., were included in his gross estate as accounts receivable. His heirs reported all the income which they received under the so-called pledge agreement, as well as the excess of the value of their interest in the timberlands over the basis of their Hobac stock, as long-term capital gains. In the case of J. Ross Holcomb, Jr., James A. and Lou H. Holcomb, and Nola D. Holcomb such excesses were $1.23, $1.24, and $1.23, respectively.

Respondent determined that in 1952 petitioners realized ordinary income upon the distribution of the timberlands to the extent that Hobac was indebted to each of them for commissions earned, and long-term capital gains to the extent that the balance of their respective interests in the timberlands exceeded the basis of their stock. Because the individual interests of the Holcomb heirs in the timberlands was less than the basis of their stock, he determined that the balance of their interests in those lands was not applicable against the basis of their stock until 1953, the year in which he determined Hobac made its final distribution in liquidation. He further determined that

in 1953 petitioners received the total fair market value of the Betz-Tipton notes through distributions made by the trustee under the so-called pledge agreement; through collections made by the trustee which were available for distribution; and through receipt of the uncollected balance of those notes as a distribution in complete liquidation of Hobac. Accordingly, he determined that petitioners realized long-term capital gains in 1953 to the extent that their individual interests in the Betz-Tipton notes exceeded the basis of their Hobac stock.

By amended answer respondent affirmatively alleged in the alternative that, should it be held that the liquidation of Hobac was completed in 1952, the amounts allegedly received in payment of the corporate debts were taxable to petitioners as ordinary income in 1952, and the balance of the assets allegedly received by them taxable as a long-term capital gain. By way of a second alternative, he further alleged that should it be held that the Betz-Tipton notes were received by petitioners in full satisfaction of the corporation's indebtedness to them, then that indebtedness was satisfied in full in 1953, and therefore petitioners were in receipt of ordinary income in that year to the extent of such indebtedness, and long-term capital gains to the extent that the face amount of the notes exceeded the amounts due them as commissions.

The Betz-Tipton notes in the face amount of $205,729.79 were secured by a deed of trust on the conveyed property and had a fair market value equal to their face amount as of the date of sale of the mill, equipment, and inventories.

### OPINION.

The controversy revolves about the liquidation of a corporation, and the various transfers by it of its property pursuant to that liquidation. We are called upon to decide what the net effect of those transfers was, and their accompanying tax consequences to the petitioners.

Petitioners' position is that Betz and Tipton assumed Hobac's indebtednesses to them, and that they in turn released Hobac from any obligation thereon and agreed to look solely to Betz and Tipton for its satisfaction. They therefore claim that, at the time they received the timberlands, Hobac was not indebted to them, and hence they are entitled to apply their respective interests in those lands against the basis of their Hobac stock. They further maintain that they were not required to take into income in 1953 the total face amount of the Betz-Tipton notes, but rather may report, in the year of their actual receipt, the amounts distributed to them by Union Planters under the so-called collateral pledge agreement.

At the outset we believe it pertinent to reiterate the familiar principle that substance rather than form governs the tax effect of transactions such as this. Acknowledging the right of a taxpayer to decrease the amount of what otherwise would be his taxes, or altogether avoid them by whatever means the law allows, the question still remains as to whether the transactions under scrutiny are in reality what they appear to be in form. *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945); *Higgins* v. *Smith*, 308 U.S. 473 (1940); *Gregory* v. *Helvering*, 293 U.S. 465 (1935). Whether the various agreements executed by petitioners, Hobac, and Betz and Tipton were effective otherwise to reduce petitioners' taxes depends upon whether those agreements had any economic consequences, and not upon an inquiry into the motives of the petitioners. Simply stated, was the characterization given the instant series of events by petitioners in accord with substantial economic reality? *Haas* v. *Commissioner*, 248 F. 2d 487 (C.A. 2, 1957); *Gilbert* v. *Commissioner*, 248 F. 2d 399 (C.A. 2, 1957).

As we view them, the instant series of events effectuated a complete liquidation of Hobac as well as a satisfaction of its indebtedness to its stockholders in 1952. In December of that year Hobac was in the process of winding up its corporate affairs. Its officers and directors had been authorized to complete its liquidation as quickly as possible by a sale of its existing assets and a satisfaction of all outstanding liabilities. The corporation was far from insolvent, possessing timberlands, inventories, a lumber mill, and related properties. Other than a mortgage indebtedness of $47,681.40 owing Union Planters National Bank, and the indebtedness of $166,381.58 due its stockholder-creditors for salaries and commissions, the record reveals no claims of creditors. After taking stock of its financial position the corporation, through a series of related transactions, proceeded to liquidate. It sold its lumber inventory to an outsider for some $50,000. It disposed of its mill, log and veneer inventories, and related properties to Betz and Tipton in return for their notes in the face amount of $205,729.79. It then distributed its two remaining assets, its timberlands and the Betz-Tipton notes, to its stockholders through two separate transactions. The timberland distribution was effected by an outright transfer of the property to its stockholders, who immediately disposed of them by sale to Anderson-Tully for $290,000. The distribution of the notes was effected through their pledge to Union Planters National Bank for the account of Hobac's stockholder-creditors, plus the purported assumption of the corporation's indebtedness by Betz and Tipton, thus satisfying Hobac's indebtedness to the stockholders. As we have noted above, the net effect of these various acts was the liquidation of Hobac and a satisfaction of its indebtedness during 1952.

But petitioners maintain that by virtue of Betz and Tipton's purported assumption of Hobac's liability to them, there was a shift of that indebtedness to Betz and Tipton, and therefore, at liquidation, they took Hobac's assets solely in liquidation of their stock. We do not agree.

Viewing the assumption-of-indebtedness agreement most favorably to the petitioners, it is apparent that Betz and Tipton did no more than agree to pay their notes, upon which they were already liable, to Hobac's stockholder-creditors. Thus, their liability arose by virtue of delivery of the notes, and not by virtue of their purported agreement to assume that indebtedness. The notes were negotiable and Betz and Tipton were obligated on them to any holder in due course to whom they might be negotiated by Hobac. In our judgment, that is the only conclusion which can be reached in the light of the assumption agreement, whereby the assumption was premised:

upon the express condition * * * that all amounts realized from the collection of the deferred purchase money notes and demand note given by Betz and Tipton * * * and all amounts realized from any foreclosure and sale under the trust deed given * * * to secure said deferred purchase money notes and demand note be applied to the payment and satisfaction of the foregoing indebtedness * * *

We conclude that as a result of that agreement, Betz and Tipton did no more than agree to make payments upon the notes for the benefit of Hobac's stockholder-creditors.

However, petitioners maintain that as of the years in issue they had not received the notes, and that any interest which they might have had therein was limited by the collateral pledge agreement to a ratable share of the proceeds actually collected therefrom through payment or foreclosure, in any event not in excess of $18,500 per year. As we see it, this argument fails to take into account the real effect of the so-called pledge agreement.

After considering its provisions, more particularly those dealing with Union Planters' authority with respect to collections upon the notes, we have concluded that the collateral pledge agreement in fact effectuated an assignment of the Betz-Tipton notes to Union Planters to serve as petitioners' agent for collection purposes, and that the stockholder-creditors thereby became the real owners of the notes in satisfaction of Hobac's indebtedness to them. This becomes all the more apparent when we consider that, despite the fact that the initial indebtedness purportedly secured was only some $166,000 and the face amount of the security some $205,000, no provisions were made for the subsequent return of the security to Hobac or its agent upon satisfaction of that indebtedness.

The Betz-Tipton notes were negotiable, interest bearing, and secured by a deed of trust upon the properties for which they were

issued; and they were given in full payment for those properties. Moreover, the parties have agreed that each note has been paid as it became due. Having been presented with no evidence to the contrary, we have concluded, and found as a fact, that as of December 20, 1952, the notes had a fair market value equal to their face amount. *Loyer* v. *Commissioner*, 199 F. 2d 452 (C.A. 6, 1952), affirming a Memorandum Opinion of this Court dated April 30, 1951.

However, petitioners maintain that they received no vested property interest in those notes during the years in issue, and furthermore that they correctly reported the amounts received by them under the so-called pledge agreement in the year of actual receipt. We do not agree. Petitioners did not receive actual possession of the Betz-Tipton notes in 1952 solely because they chose to have them delivered to Union Planters for collection. The latter received them as petitioners' agent, and for their account. We are therefore of the opinion that petitioners were in constructive receipt of the notes in 1952. *Samuel E. Diescher*, 36 B.T.A. 732 (1937), affd. 110 F. 2d 90 (C.A. 3, 1940), certiorari denied 310 U.S. 650 (1940). Inasmuch as we have found that the notes had a fair market value equal to their face amount, they were the equivalent of cash to petitioners upon receipt, and must be so accounted for. The provision made with Union Planters for their ultimate collection in no way affected their initial receipt. Rather it was merely the method chosen by petitioners to effectuate an orderly collection and distribution of the proceeds of each note as it matured.

We conclude that petitioners received both the timberlands and the Betz-Tipton notes from Hobac during 1952 by way of distributions in liquidation. To the extent of Hobac's indebtedness to each of them, the value of those assets represented ordinary income. Anything in excess thereof represented payment for their stock, and was taxable as a capital gain to the extent that it exceeded their basis therein. In computing Hobac's indebtedness to the individual petitioners the equalization agreement should be ignored. It was merely a private agreement between the stockholder-creditors as to the manner in which the proceeds from the sale of the timberlands would be divided, and neither increased nor decreased Hobac's liability to any of them.

No issue having been raised with respect to the addition to tax under section 294(d)(2) in Docket No. 60113 for 1952, it is hereby sustained subject to computation in the light of our disposition of the above issues.

*Decisions will be entered under Rule 50.*