**ESTATE of Louis KAMM, Deceased, and Emily E. Kamm, Surviving Wife, Also Known as Edythe Emily Kamm, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE.**

No. 15048.

United States Court of Appeals Third Circuit.

Argued March 29, 1965.

Decided Aug. 12, 1965.

Edgar J. Goodrich, Washington, D. C., Harold Kamens, Newark, N. J., for petitioners.

Robert J. Golten, Atty., Tax Div., Dept. of Justice, Washington, D. C. (Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, David O. Walter, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before HASTIE and FREEDMAN, Circuit Judges, and WEBER, District Judge.

HASTIE, Circuit Judge.

The appellants, Estate of Louis Kamm and Kamm's widow, Emily, are here seeking a review of a Tax Court decision which sustained the Commissioner's finding of a deficiency in the Kamms' 1949 joint income tax return. The matter in controversy is $143,258.82 of unreported income, the source of a claimed tax deficiency of $34,827.22.

This income resulted from a sale of the stock of a real estate company, and the principal question is whether the taxpayers realized income from this transaction in 1949 or in 1950. The Kamms filed their returns on a cash and calendar year basis.

Louis Kamm and David Cronheim had organized a corporation to engage in the real estate business. Only ten shares of stock were issued, five in the name of Emily Kamm and five in the name of Cronheim and his nominees. The stock issued in the name of Emily Kamm was delivered to and remained in the possession of Louis Kamm. The Tax Court has found as a fact that Louis Kamm was the beneficial owner of this stock. .

In August, 1949, after the corporation had acquired valuable assets, the stockholders contracted to sell all of their stock to an individual purchaser. The closing was to occur on January 3, 1950 or earlier, at the option of the purchaser, who exercised his option by advancing the closing date to December 30, 1949.

In the meantime the sellers had designated Milton Unger, an attorney, to represent them at the closing, to receive the proceeds, to pay certain premiums and commissions and to distribute the net proceeds among them in accordance with their respective interests. Unger was instructed by Louis Kamm to deposit Emily's share of the proceeds in two accounts maintained in her name at a certain bank.

The closing was completed between two and three o'clock during the afternoon of Friday, December 30, the last banking day in 1949. At that time Unger received a certified check for $246,-398.57 and an uncertified check for $2,-136.61, as proceeds of the sale, additional to an earlier payment of earnest money. The same afternoon Unger was permitted to deposit the checks in his trustee account at his bank in Newark, although it was after the close of the banking day. These checks cleared on January 3, 1950, the first banking day of 1950.

On Saturday, December 31, Unger drew checks, dated January 3, 1950, on his trustee account payable to Emily Kamm for her net share of the proceeds. On January 3, 1950 these checks were deposited, in accordance with the Kamms' instructions, in Emily's two bank accounts. In the petitioners' view, these facts establish that the taxpayers did not realize income from the sale until 1950.

If the sellers had personally received on December 30 the checks then delivered to Unger we think they would have realized income at that time, although the checks did not clear until 1950.

■ Ordinarily a check constitutes taxable income to a cash-basis taxpayer when he receives it. Lavery v. Commissioner of Internal Revenue, 7th Cir. 1946, 158 F.2d 859; Charles F. Kahler, 1952, 18 T.C. 31; see Avery v. Commissioner of Internal Revenue, 1934, 292 U.S. 210, 215, 54 S.Ct. 674, 78 L.Ed. 1216; Note, Checks and Notes as Income When Received by a Cash-Basis Taxpayer, 1960, 73 Harv.L.Rev. 1199. A proper exception to this rule has been made where the payor has imposed some restriction upon the payee's use of the check. See, e. g., L. M. Fischer, 1950, 14 T.C. 792. But in the present case such restrictive directions as there were about the disposition of the proceeds were the payees' own. They but emphasize the existence of dominion over the checks and unrestricted power to dispose of them.

■ It is true that the time of receipt made it impracticable, except by some special arrangement out of the ordinary course of business, to convert the check into cash before the end of the taxable year. However, a check that is subsequently honored in due course, particularly a certified check such as the one given here for 99% of the proceeds, has value and commercial utility so much like money, and its acceptance in lieu of and convertibility into money are so routine, that the rule which treats its receipt like the receipt of money for determining the time of income realization is

reasonable and should be followed.[1] Charles F. Kahler, supra; cf. Estate of Modie J. Spiegel, 1949, 12 T.C. 524. This rule is simple and understandable. It is also fair and practical in that it leaves the parties to an income producing transaction free to control and fix the time of receiving income as they will.

■ The appellants predicate an additional argument for postponing taxation upon the fact that it was Unger rather than the taxpayers who personally received payment in 1949. However, the general rule that receipt by an agent is receipt by his principal is normally followed in tax cases. Maryland Casualty Co. v. United States, 1920, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297. The taxpayers here seek to avoid that rule by pointing out that Unger, as a lawyer acting for a client, was obligated to deposit the checks in his trust account and was not obligated to remit to his principals until the checks had cleared. However, under the doctrine of the Maryland Casualty case we think this circumstance does not alter the result. The principal has elected to act through an attorney and thus has voluntarily subjected himself to a routine which delayed somewhat his personal receipt of what the agent collects.

■■ The taxpayers also argue that Unger was an "escrowee", rather than an agent, because he was charged with making certain disbursements before remitting the net proceeds to the taxpayers. But this argument misconceives the nature of an escrow. Such an arrangement involves an intermediary with obligations to parties on both sides of the transaction, Commissioner of Internal Revenue v. Tyler, 3d Cir. 1934, 72 F 2d 950, as distinguished from an agent acting exclusively in the interest of and pursuant to the authority and direction of the seller. Of course, the fact that an agent represents several sellers, who have given various instructions concerning the disposition of their several shares in the proceeds, does not derogate from the individual agency relation between each seller and the common agent. Minnie R. Ebner, 1956, 26 T.C. 962; O. D. Bratton, 1959, 31 T.C. 891, 900, aff'd per curiam, 6th Cir. 1960, 283 F.2d 257, cert. denied, 1961, 366 U.S. 911, 81 S.Ct. 1084, 6 L.Ed. 2d 235.

■■ As an entirely separate point, the taxpayers also challenge the Tax Court's finding that the stock sold was property of Louis Kamm rather than his wife Emily, and thus had a zero tax basis. The opinion of the Tax Court contains a fair and careful evaluation of the evidence on this issue and reaches the fully justified conclusion that Louis rather than Emily was the owner of the stock at the time of its sale. And since the corporation in question was formed and its stock issued without any paid in capital, the finding of a zero basis was mandatory.

■ A final issue concerns the effect of action by Emily Kamm in executing Form 872, purporting to extend the period for assessment of 1949 income taxes. It is not questioned that this waiver was effective as to her personal obligation. However, she also undertook to extend the period for assessment as to the estate of her late husband, although no letters of administration had been issued to anyone. The Tax Court concluded that the effectiveness of Emily's action upon the estate was "a moot question because Emily, individually, as a signer of decedent's and her own 1949 joint income tax return, is liable for the whole deficiency arising therefrom * * *." Moreover, it appears that the estate of Louis Kamm is insolvent and that Emily is transferee of its major assets. In these circumstances, a judgment against her alone appears to be an effective equivalent of a judgment against both.

Since no matter of substance seems to depend upon the effectiveness of the

1. Of course a certified check embodies an obligation of the certifying bank. Thus, under an alternative rationalization the certified check in this case may be viewed as property of precise value received in exchange for stock with gain resulting at the time of the exchange.

widow's attempted waiver for the estate and the Tax Court did not rule upon its merits, we will approve the imposition of income tax liability upon her only.

Thus restricted, the decision of the Tax Court will be affirmed.