**R. Neal BRIGHT, etc.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

**No. 90–1453.**

United States Court of Appeals,
Fifth Circuit.

Feb. 27, 1991.

Larry L. Bean, William H. Hornberger, Jackson & Walker, Dallas, Tex., for plaintiff-appellant.

Janet K. Jones, Gary R. Allen, Chief, Appellate Section, Tax Div., Dept. of Justice, Jonathan S. Cohen, Washington, D.C., Marvin Collins, U.S. Atty., Dept. of Justice, Dallas, Tex., for defendant-appellee.

Before BROWN, SMITH and WIENER, Circuit Judges.

PER CURIAM:

Plaintiff–Appellant R. Neal Bright, the executor of the estate of Elizabeth R. Cornell, appeals the district court's grant of summary judgment and entry of judgment in favor of Defendant–Appellee, the United States.[1] The district court held that for income tax purposes the check that Cornell's employee received on December 27, 1985, constituted the receipt of cash or a cash equivalent by Bright on that date. We affirm.

OPERABLE FACTS

In 1970 Ms. Cornell entered into a trust agreement whereby the Elizabeth R. Cornell Trust was created for her benefit. The trust is a "grantor trust" for federal income tax purposes.[2] Consequently, Cornell was treated as the owner of the trust and all income, gain, expenses and losses were taxable to her. Both Cornell and the trust used a calendar year as their taxable year, and both used the cash basis method of accounting.[3] In 1985 and 1986 Cornell and Gilbert R. Bright (remaining trustee) served as trustees.

The trust owned 188,848 shares of stock of the Southland Royalty Company. Southland had agreed to merge with Burlington Northern, Inc. and M–R Holdings, Inc. (Holdings), a Burlington subsidiary. Pursuant to the merger agreement, Holdings offered to purchase all outstanding Southland shares. In early December 1985, the remaining trustee accepted Holding's offer of $3,210,416.00 for the trust's Southland shares. Pursuant to the purchase offer, the remaining trustee had the trust's bank, InterFirst Bank Dallas, N.A., located in Dallas, Texas, send the stock

---

1. Pursuant to Section 7422 of the Internal Revenue Code of 1954, the operative code for the tax year at issue in this case, and 28 U.S.C. § 1346(a), the district court has jurisdiction over any civil action against the United States for the recovery of internal revenue tax. Section 1291 of Title 28 confers jurisdiction on this court.

2. *See* 26 U.S.C. § 671.

3. Section 451 of Title 26 of the United States Code states the general rule for determining the taxable year of inclusion of items of income. The regulations governing the cash receipts method of accounting are set forth in Section 1.446–1(c)(i) of title 26 of the Code of Federal Regulations.

certificates to First Fidelity Bank, N.A., New Jersey, located in Newark, New Jersey. The remaining trustee made no arrangements with Fidelity or Holdings regarding the date of payment for the shares.

■ On Friday, December 27, 1985, an employee of Cornell's received the Holdings check from Fidelity at her office in Fort Worth.[4] Neither Holdings, as maker of the check, nor Fidelity, as payor bank, placed any restrictions on the check's negotiability. Having informed the remaining trustee on the 27th of December that the check had arrived, Cornell's employee endorsed and mailed the check to InterFirst for deposit in the trust's account. InterFirst posted the check to the trust's account on Monday, December 30, 1985. On the 30th of December, Cornell's employee placed an order with InterFirst, as the remaining trustee had instructed, to buy government securities with the funds from the Holdings check. InterFirst, however, informed the employee that it would restrict the availability of the funds to the trust until InterFirst had collected the funds from Fidelity. Because of this restriction, InterFirst did not execute the purchase order until January 3, 1986.

In April 1986, both the taxpayer and the trust filed federal income tax returns for the 1985 taxable year. On these returns both the taxpayer and the trust included $1,284,166.40 in net capital gain recognized on the sale of the Southland shares. In July 1986, claiming that the gain on the sale of the shares should properly be reported in 1986, the taxpayer filed an amended 1985 tax return in which she claimed a refund of $674,187.36, plus interest, for a purported overpayment of her 1985 federal income tax.

Cornell died in December 1986. In August 1987, R. Neal Bright, the executor, instituted suit to recover the disputed overpayment. Bright contended that because InterFirst restricted the use of the funds until January 1986, Cornell neither actually nor constructively received in 1985 the funds from the sale of the stocks. The government maintained that the Holdings check was a "cash equivalent" that Cornell had actually received in 1985 and, in the alternative, that as the check's negotiability had no substantial restrictions placed on it, the income was constructively received in 1985. In either case, the income was, the government argued, includable in 1985.

After stipulating to the facts, both parties moved for summary judgment. On May 8, 1990, the district court denied the executor's and granted the government's summary judgment motion. Citing *Kahler v. Commissioner*, 18 T.C. 31, 34 (1952) for the proposition that once a check is honored, the date of payment relates back to the date of delivery, the district court stated that "[t]he check received by the Decedent's employee on December 27, 1985, constituted the receipt of cash or a cash equivalent by decedent on that date." After the district court denied the executor's timely motion for a new trial or, alternatively, for reconsideration, the executor appealed.

## DISCUSSION

■ In declaring receipt of the Holdings check to be receipt of a cash equivalent, the district court relied solely upon *Kahler*, 18 T.C. 31 (1952). In *Kahler*, the tax court held that a check for approximately $4,300.00 which the taxpayer received from his employer after 5 p.m. on December 31st and cashed on January 2nd was a cash equivalent upon receipt. *Id.; see also Lavery v. Commissioner*, 158 F.2d 859, 860 (7th Cir.1946) (because taxpayer could have cashed check for $2,666.67 on Tuesday December 30th or on next day, check was equivalent of cash in year received). Even if cashing the check in the year in which drawn "might be impossible," stated the tax court, the check was still income in the year in which drawn if actual delivery occurred in that year. *Kahler*, 18 T.C. at 34.

The *Kahler* court recognized as "completely distinguishable" a situation in

**4.** The general rule that receipt by an agent constitutes receipt by the principal is normally followed in tax cases. *Estate of Kamm v. Commissioner*, 349 F.2d 953, 956 (3rd Cir.1965) (citing *Maryland Casualty Co. v. United States*, 251 U.S. 342, 40 S.Ct. 155, 64 L.Ed. 297 (1920)).

which a check was "subject to a substantial restriction" which the drawer had imposed on the check. *Id.* (distinguishing *Fischer v. Commissioner*, 14 T.C. 792 (1950)). The third circuit has also agreed that when the payor imposes a restriction upon the payee's use of a check, an exception exists to the general rule that ordinarily a check constitutes taxable income to a cash-basis taxpayer when he receives it. *Estate of Kamm v. Commissioner*, 349 F.2d 953, 955 (3rd Cir.1965). The court in *Kamm* refused, however, to admit the exception when the payee is responsible for the restrictions. *See id.* Such restrictions "emphasize the existence of dominion over the checks and unrestricted power to dispose of them." *Id.* at 956.

In *Kamm* the taxpayer's attorney received two checks on Friday December 30th after banking hours and deposited them in his trustee account that afternoon. On December 31st, the attorney drew checks on his account payable to the taxpayer and dated January 3rd, on which date the checks were deposited in the taxpayer's account in accordance with her instructions. The court acknowledged that "the time of receipt made it impracticable ... to convert the check into cash before the end of the taxable year." *Id.* The court, nevertheless, reasoned that because a certified check "has value and commercial utility so much like money, and its acceptance and convertibility into money are so routine," it is income upon receipt. *Id.* at 955–56 (citing *Kahler*, 18 T.C. 31).

The situation confronting the court in this appeal favors the cash-equivalent-upon-receipt rule even more than do the situations in *Kahler* and *Kamm*. As Cornell's employee received the Holdings check from Fidelity during business hours on Friday, December 27, 1985, Cornell had five calendar days and at least two business days before the end of the year in which to acquire access to the funds.

Furthermore, unlike the drawer of the check in *Fischer*, Fidelity, the payor bank, did not impose any restrictions on the negotiability of the check. In order not to confer preferential treatment on any holder of

outstanding Southland stock, Fidelity sent the same type of check to all sellers who accepted Holdings' offer. Consequently, it would not wire same-day funds. Neither would it issue cashier's checks to cover the tender offer. But, crucially for the purposes of this appeal, Fidelity regarded the check drawn on it as "a cash transaction, thus same day funds." Had Cornell opened an account at Fidelity, she would have had immediate access to her funds.

The taxpayer's privies—either her employee, the remaining trustee, or, InterFirst, the trust's bank—imposed whatever restrictions that were imposed on accessibility to the funds. Cornell's employee informed the remaining trustee that the check had arrived. The latter instructed her to mail the check to InterFirst, the trust's bank, and to request InterFirst to purchase government securities with the funds. InterFirst accepted the check for deposit, but refused to purchase the securities until it had collected the funds from Fidelity. In ample time for the taxpayer or her privies to have access to same-day funds at Fidelity before the end of the year, InterFirst notified the employee of the restriction that it was imposing on the use of the funds until it had collected them from Fidelity.

Neither Cornell nor the remaining trustee chose to exercise the alternative option of immediate access to the funds through Fidelity. Instead, the taxpayer's agent or her trustee chose to deposit the check in InterFirst, which limited access to the funds. In doing so, Cornell "voluntarily subjected [her]self to a routine which delayed somewhat [her] personal receipt" of the funds. *See Kamm*, 349 F.2d at 956 (rejecting argument that taxpayer did not receive proceeds until January because attorney required to deposit check in trust account and not obliged to remit to taxpayer until checks had cleared).

Because the instant case concerns a restriction that the taxpayer or her privies imposed, we need not address the executor's contention that the case law does not stand for the proposition that only when the payor places restrictions upon a check

does an exception to the income-upon-receipt rule exist. We note, however, that the cases upon which the executor primarily relies stand for the proposition that when the taxpayer did not have the use and enjoyment, or the untrammeled use, or the control and enjoyment of even a portion of a check in a particular year, then that amount is not taxable in that year. *See Fairbanks v. Commissioner,* 3 T.C. 260 (1944), and *Preston v. Commissioner,* 35 B.T.A. 312 (1937). As Cornell or her privies imposed the restrictions upon use in the instant case, our holding is not inconsistent with those cases upon which the executor relies.

The executor also claims that as the Holdings check was drawn for such a large amount, it is not a cash equivalent because it fails the readily marketable and immediately convertible test which this circuit established in *Cowden v. Commissioner,* 289 F.2d 20, 24 (5th Cir.1961); *see Watson v. Commissioner,* 613 F.2d 594, 597 (5th Cir. 1980) ("This court has previously been called upon [citing, *inter alia, Cowden* ] to determine whether commercial instruments constitute taxable income in the year of receipt."); *see also* Rev. Ruling 68–606 (finding in *Cowden* a readily marketable and immediately convertible to cash component). Because the funds were available as "same day funds" to the taxpayer through Fidelity, this is a bootless argument. The large amount for which the check was drawn did not ultimately affect its ready marketability.

In conclusion, we agree with the district court that the check which the taxpayer's employee received in 1985 constituted taxable income in that year. Consequently, the judgment of the district court is AFFIRMED.