# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 96-3828

_____

Horace R. Walter; Donna L. Walter,    *

                                  *

    Plaintiffs - Appellants,    *

                                  *   Appeal from the United States

    v.                            *   District Court for the

                                  *   District of South Dakota.

United States of America,    *

                                  *

    Defendant - Appellee.    *

_____

Submitted:  February 9, 1998
Filed:  July 8, 1998

_____

Before WOLLMAN, LOKEN, and HANSEN, Circuit Judges.

_____

LOKEN, Circuit Judge.

Horace and Donna Walter farm and feed cattle in rural Clark County, South Dakota.  By 1985 and 1986, the tax years in question, they were feeding and selling over 8,000 cattle per year and farming about 2,000 acres.  In their joint federal income tax returns for those years, the Walters reported taxable income of $195,353 in 1985 and $204,513 in 1986.  In 1988, the Commissioner of Internal Revenue audited the returns, increasing the Walters' taxable income to $393,817 in 1985 and $529,159 in 1986, and assessing negligence and substantial understatement penalties.  See 26 U.S.C. (hereafter cited as "I.R.C.") §§ 6653, 6661.  The Walters paid the amounts due

and filed this refund lawsuit. Following trial, the district court entered judgment partially in favor of the Walters and partially in favor of the Commissioner. The Walters appeal, raising two issues: whether income received by check was taxable in 1986, the year a check was initially received and lost, and whether the Commissioner abused her discretion by refusing to waive part of the substantial understatement penalty. We affirm.

## I. The Lost Check Issue.

During the 1988 audit, the IRS auditor discovered a document from a cattle buying customer in the Walters' business records. The document reported that the Walters sold 115 steers to IBP, Inc., in March 1986 for a net price of $77,441.83. The document appeared to be a "tear slip" -- the top half of an IBP document that normally includes a business check which the recipient detaches for negotiation or deposit. The Walters' bank records for 1986 showed no such deposit. The Walters then contacted their customer. IBP advised that its March 1986 check for $77,441.83 had never been cashed and issued a new check in January 1988. The Walters included that amount in their 1988 taxable income. Some months later, the Commissioner issued an audit report contending that this income was taxable in 1986 under a theory of constructive receipt. The jury found that the first check was received in 1986 and then lost (presumably when the Walters mailed it to their bank for deposit), and that the Walters negligently failed to include the IBP payment in their 1986 income. On appeal, they argue the district court erred in not granting them judgment as a matter of law on their claim that the $77,441.83 was not taxable income until 1988.

For cash basis taxpayers like the Walters, an item of gross income "shall be included in the gross income for the taxable year in which received." I.R.C. § 451(a). Because the timing of income receipt may have great tax significance, and because taxpayers are ingenious at devising ways to minimize taxes, the Commissioner has

developed the concept of "constructive receipt," which the courts have uniformly endorsed. This concept is defined in the Commissioner's current regulations:

> Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions.

Treas. Reg. (26 C.F.R.) § 1.451-2(a).

A check in the hands of a taxpayer ordinarily means that funds are immediately available. Therefore, the general rule is that a check constitutes taxable income to a cash-basis taxpayer *when received*. See Avery v. Commissioner, 292 U.S. 210, 215 (1934); Kahler v. Commissioner, 18 T.C. 31 (1952). There are some common sense exceptions to this rule, such as when the payor may be insolvent, see Lavery v. Commissioner, 158 F.2d 859, 860 (7th Cir. 1946), or has imposed substantial restrictions or conditions that prevent the taxpayer from receiving funds, see Bright v. United States, 926 F.2d 383, 386-87 (5th Cir. 1991).

Relying on a reference to negotiable instruments law in Kahler, 18 T.C. at 34, the Walters argue that only if presentment is made and a check is honored should the date of payment relate back to its delivery. Therefore, a check that is lost and never honored should not be taxable income in the year the check was received. We agree that the law of negotiable instruments provides a useful backdrop, but it cannot trump the doctrine of constructive receipt as developed in the Internal Revenue Code and its implementing Treasury Regulations. The Walters received the check in 1986. IBP was not insolvent and placed no conditions or restrictions on its payment. Losing the check was a restriction on collection imposed by the Walters, the payees. No tax case has recognized an exception to the rule that receipt of a check is constructive receipt of the

-3-

income when the restrictions on "the disposition of the proceeds were the payees' own." Estate of Kamm v. Commissioner, 349 F.2d 953, 955 (3d Cir. 1965); accord Bright, 926 F.2d at 386-87; United States v. Hancock Bank, 400 F.2d 975, 979 (5th Cir. 1968).  As we said in Loose v. United States, 74 F.2d 147, 150 (8th Cir. 1934):

> the strongest reason for holding constructive receipt of income to be within the statute is that for taxation purposes income is received or realized when it is made subject to the will and control of the taxpayer and can be, except for his own action or inaction, reduced to actual possession.  So viewed, it makes no difference why the taxpayer did not reduce to actual possession.  The matter is in no wise dependent upon what he does or upon what he fails to do.  It depends solely upon the existence of a situation where the income is fully available to him.

Accord Sainte Claire Corp. v. Commissioner, 73 T.C.M. 2540 (1997).  Accordingly, the face amount of the check was income to the Walters when they received the check.

## II.  The Substantial Understatement Penalty Issue.

Because the Walters' business includes purchasing, fattening, and selling cattle, I.R.C. § 471 requires them to determine cattle inventories at the beginning and end of each tax year, "conforming as nearly as may be to the best accounting practice in the trade or business."  See also Treas. Reg. § 1.471-1.   Inventory values are used to compute gross profit, because gross profit equals total sales revenue minus cost of goods sold, and cost of goods sold "equals Opening Inventory, plus Cost of Inventory Acquired, minus Closing Inventory."  Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 530 n.9 (1979); see generally 4 B. Bittker and L. Lokken, Federal Taxation of Income, Estates and Gifts, ¶ 105.8 (2d ed. 1992).

In 1988, the IRS auditor found that the Walters had no ledger accounts showing cattle purchased and sold, no actual head counts of cattle, and no recognizable method

-4-

for determining and valuing inventories. To redetermine cost of goods sold for 1985 and 1986, she began with a figure the Walters did have, cost of inventory as of January 1, 1985. She divided that figure by the average cost of cattle purchased in 1985 to determine opening inventory, that is, the number of cattle on hand that day. Using the Walters' purchase and sale invoices for 1985 and 1986, she then calculated the other components of gross profit, applying "FIFO" rules in making her calculations.[1] The audit resulted in an increase to the Walters' reported gross profit of $147,888 in 1985 and $225,529 in 1986.

On appeal, the Walters do not challenge the redetermination of their gross profit calculations. Instead, they argue the Commissioner should have waived the substantial understatement penalty attributable to the resulting increase in taxable income. The penalty equals twenty-five percent of the amount of any underpayment attributable to a substantial understatement. See I.R.C. § 6661(a). An understatement is substantial if it exceeds the greater of ten percent of the tax required to be shown on the return, or $5,000. See I.R.C. § 6661(b)(1). The Commissioner may waive an understatement penalty if the taxpayer shows good faith and establishes reasonable cause for the understatement. See I.R.C. § 6661(c). We review the Commissioner's decision not to waive the penalty for abuse of discretion and the district court's determination of that issue *de novo*. See Caulfield v. Commissioner, 33 F.3d 991, 994 (8th Cir. 1994), cert. denied, 514 U.S. 1016 (1995).

The Walters argue that the Commissioner abused her discretion in declining to waive the penalty because their substantial understatement was based on the auditor's

---

[1]The FIFO inventory method (an acronym for "first in, first out") assumes that the oldest goods are sold out of inventory first. The LIFO method (an acronym for "last in, first out") assumes that the most recently acquired goods are sold out of inventory first. In times of rising prices, the LIFO method increases cost of goods sold, thereby deferring taxes. Taxpayers are required to file an election to adopt the LIFO method. See I.R.C. § 472. The Walters never filed that election.

unreasonable use of the FIFO inventory accounting method. We disagree for two independent reasons. First, at trial, the Walters were unable or unwilling to explain how they determined cost of goods sold. Horace Walter said they used "a combination of LIFO and some FIFO," but the closest he came to explaining the figures on their tax returns was to say they used a method the Commissioner found acceptable when they were audited in the early 1970's. That is plainly inadequate. The most important factor in determining whether there was reasonable cause for an understatement is "the extent of the taxpayer's effort to assess the taxpayer's proper tax liability." Treas. Reg. § 1.6661-6(b). The Walters' failed to prove that they made any effort to adopt an appropriate inventory method, to maintain proper inventory records, and to determine cost of goods sold in accordance with recognized accounting principles.

Second, the Walters failed to prove that the inventory accounting method used by the IRS auditor had an unreasonable impact on the redetermination of their 1985 and 1986 taxable incomes. The auditor determined opening inventory for 1985 by using the average cost of cattle purchased in 1985. This means there was relatively little difference in the cost of the first- and last-purchased cattle and thus the choice between the FIFO and LIFO methods had little impact on gross profit. Moreover, the cost of cattle declined in 1986, so use of the FIFO method was favorable to the Walters that year. On this record, we think it apparent that the audit resulted in a large increase in taxable income, not because the auditor used the FIFO inventory method, but because the cost of goods sold figures used by the Walters were grossly inflated.

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-6-