T.C. Memo. 2005-192


UNITED STATES TAX COURT


ARTHUR F. MILLARD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 3713-04.                    Filed August 8, 2005.


Arthur F. Millard, pro se.

<u>Travis T. Vance III</u>, for respondent.


MEMORANDUM OPINION

WELLS, <u>Judge</u>:  Respondent determined a deficiency of $2,764 in petitioner's Federal income tax for 2001.  The issue to be decided is whether petitioner's 2001 gross income includes the amount of a check petitioner received but did not cash in 2001. All section references are to the Internal Revenue Code (Code),

as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The parties submitted the instant case, fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of fact are hereby incorporated by this reference and are found as facts in the instant case.

At the time of filing the petition, petitioner resided in Doraville, Georgia. During 2001, petitioner owned an individual retirement account (IRA) with SouthTrust Bank. On May 10, 2001, SouthTrust Bank issued to petitioner a check in the amount of $10,841.06 (the original check). SouthTrust Bank debited petitioner's IRA account by $10,841.06 and recorded the transaction as a premature distribution. Subsequently, SouthTrust Bank submitted to respondent a 2001 Form 1099-R, reporting a taxable distribution of $10,841.06. The records of SouthTrust Bank indicated a zero balance in petitioner's IRA account as of January 15, 2002.

On March 21, 2003, petitioner presented the original check to SouthTrust Bank for payment. SouthTrust Bank canceled the original check but issued petitioner a second check in the amount of $10,841.06 (the replacement check), which reflected the current date.

On December 1, 2003, respondent mailed to petitioner's last known address a statutory notice of deficiency with respect to petitioner's 2001 tax year. Respondent determined that a deficiency resulted from petitioner's failure to include the amount of the check in gross income for 2001. In addition to the regular tax liability, respondent determined that a 10-percent additional tax applied to the amount of the check pursuant to section 72(t). Petitioner timely filed a petition with this Court for a redetermination of the deficiency.

## Discussion

Respondent contends that the distribution of the original check by SouthTrust Bank constituted an IRA distribution and, consequently, the amount of the original check must be included in petitioner's gross income in the year of receipt. Petitioner concedes that he initiated closure of the IRA account and received the original check from SouthTrust Bank in 2001. However, petitioner contends that, because he did not endorse or negotiate the original check, the account remained open throughout 2001. Relying on articles 3 and 4 of the Uniform Commercial Code as adopted by Georgia and related caselaw, petitioner contends that the original check and the underlying funds remained the property of SouthTrust Bank during the year in issue, and, consequently, the receipt of the original check did not constitute the receipt of taxable income by petitioner. The

statutes petitioner cites include Ga. Code Ann. secs. 11-3-101 and 11-4-101 (1981). Citing A.G. Edwards & Sons, Inc. v. Paulk, 25 Bankr. 913 (Bankr. M.D. Ga. 1982), petitioner contends that a check is not a financial statement or money but is evidence of debt. Petitioner also cites United States v. Forcellati, 610 F.2d 25 (1st Cir. 1979), as illustrative of the proposition of negotiable instruments law that the drawer of a check retains ownership of the check.

Section 61(a) provides that gross income includes all income from whatever source derived, subject only to the exclusions otherwise provided.[1] In section 61(a), Congress intended "to exert 'the full measure of its taxing power' and to bring within the definition of income any 'accession to wealth.'" United States v. Burke, 504 U.S. 229, 233 (1992) (citations omitted). Consequently, the definition of gross income has a broad scope, and exclusions are construed narrowly. Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995); Commissioner v. Jacobson, 336 U.S. 28, 49 (1949).

---

[1]SEC. 61. GROSS INCOME DEFINED.

    (a) General Definition.--Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items:

    \*    \*    \*    \*    \*    \*    \*

    (9) Annuities;

Section 408(d)(1) provides that any amount paid or distributed out of an individual retirement plan must be included in gross income by the distributee in the manner provided under section 72,[2] except as otherwise provided.  The term "individual retirement plan" includes an IRA.  Sec. 7701(a)(37).  However, the amount distributed from an individual retirement plan is not subject to tax if the amount is rolled over into an individual retirement account or individual retirement annuity within 60 days of the distribution.  See sec. 408(d)(3).  In the instant case, petitioner concedes that he made no rollover contribution after receiving the original check from SouthTrust Bank.

Cash method taxpayers must include all items of gross income in the taxable year of actual or constructive receipt.[3]  Section 1.451-2(a), Income Tax Regs., sets forth the general rule for constructive receipt of income as follows:

---

[2]Sec. 72(a) provides:

   SEC. 72(a).   General Rule for Annuities.-- Except as otherwise provided in this chapter, gross income includes any amount received as an annuity (whether for a period certain or during one or more lives) under an annuity, endowment, or life insurance contract.

[3]Sec. 1.446-1(c)(1)(i), Income Tax Regs., provides:

   (i) Cash receipts and disbursements method.  Generally, under the cash receipts and disbursements method in the computation of taxable income, all items which constitute gross income (whether in the form of cash, property, or services) are to be included for the taxable year in which actually or constructively received.  * * *.

        (a) General rule.  Income although not actually reduced
    to a taxpayer's possession is constructively received by him
    in the taxable year during which it is credited to his
    account, set apart for him, or otherwise made available so
    that he may draw upon it at any time, or so that he could
    have drawn upon it during the taxable year if notice of
    intention to withdraw had been given.  However, income is
    not constructively received if the taxpayer's control of its
    receipt is subject to substantial limitations.  * * *

Consequently, a cash method taxpayer constructively receives income as of the date that a check is received absent a substantial limitation.  Furstenberg v. Commissioner, 83 T.C. 755, 791 n.28 (1984); Kahler v. Commissioner, 18 T.C. 31, 34-35 (1952); Roberts v. Commissioner, T.C. Memo. 2002-281.  In the instant case, the record reflects that the original check was not subject to substantial limitations, and petitioner makes no contention otherwise.  Consequently, we find that petitioner constructively received $10,841.06 of income upon his receipt of the original check in 2001.[4]  Accordingly, petitioner's 2001 gross income includes the IRA distribution of $10,841.06.

    Petitioner's reliance on Georgia commercial statutes and related caselaw is misplaced.  While State law creates legal interests and rights, it does not override the Federal doctrine

---

[4]Petitioner was also in actual receipt of the check, which we have held to constitute a cash equivalent.  In Martin v. Commissioner, T.C. Memo. 1992-331 (citing Lavery v. Commissioner, 158 F.2d 859, 860 (7th Cir. 1946), affg. 5 T.C. 1283 (1945)), affd. 987 F.2d 770 (5th Cir. 1993), we stated:  "The receipt of a check is tantamount to the receipt of cash, even if the check is not deposited or otherwise negotiated, provided that its receipt is not subject to 'substantial limitations' and there is no reason to suppose that it will be dishonored,"

of constructive receipt as set forth in the Code and the regulations, since it is Federal law that designates which of those interests and rights is taxed.  See <u>Walter v. United States</u>, 148 F.3d 1027, 1029 (8th Cir. 1998) ("We agree that the law of negotiable instruments provides a useful backdrop, but it cannot trump the doctrine of constructive receipt as developed in the Internal Revenue Code and its implementing Treasury Regulations.").

Section 72(t)(1) provides that a 10-percent additional tax applies to any amount received from a qualified retirement plan, subject to exceptions enumerated in section 72(t)(2).[5]  In the

---

[5]Sec. 72(t) provides:

SEC. 72(t).  10-Percent Additional Tax on Early Distributions From Qualified Retirement Plans.--

(1) Imposition of additional tax.--If any taxpayer receives any amount from a qualified retirement plan (as defined in section 4974(c)), the taxpayer's tax under this chapter for the taxable year in which such amount is received shall be increased by an amount equal to 10 percent of the portion of such amount which is includible in gross income.

(2) Subsection not to apply to certain distributions.--Except as provided in paragraphs (3) and (4), paragraph (1) shall not apply to any of the following distributions:

(A) In general.--Distributions which are--

(i) made on or after the date on which the employee attains age 59 1/2,

(ii) made to a beneficiary (or to the estate of the employee) on or after the death

(continued...)

instant case, the record reveals that no exception to the 10-percent additional tax applies with respect to the distribution of $10,841.06, and petitioner does not contend otherwise. Consequently, we find that the 10-percent additional tax applies to the distribution in issue.

To reflect the foregoing,

Decision will be entered for respondent.

---

[5](...continued)
of the employee,

(iii) attributable to the employee's being disabled within the meaning of subsection (m)(7),

(iv) part of a series of substantially equal periodic payments (not less frequently than annually) made for the life (or life expectancy) of the employee or the joint lives (or joint life expectancies) of such employee and his designated beneficiary,

(v) made to an employee after separation from service after attainment of age 55,

(vi) dividends paid with respect to stock of a corporation which are described in section 404(k), or

(vii) made on account of a levy under section 6331 on the qualified retirement plan.