IN THE OREGON TAX COURT
REGULAR DIVISION

Ormand H. ORMSBY
and Barbara J. Ormsby,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC 4637)

Ormand H. Ormsby and Barbara J. Ormsby, Plaintiffs (taxpayers) argued the cause *pro se*.

Douglas M. Adair, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered November 24, 2004.

### HENRY C. BREITHAUPT, Judge.

## I.   INTRODUCTION

This matter is before the court for decision following a trial at which Plaintiffs (taxpayers) appealed the audit of their 1996 and 1997 personal income tax returns performed by Defendant Department of Revenue (the department).

## II.   FACTS

Taxpayers are married and file joint personal income tax returns. During the 1996 and 1997 personal income tax years (the relevant period), Barbara Ormsby worked as a flight attendant for Delta Air, Inc. (Delta). As a flight attendant, Barbara Ormsby earned income from the sale of duty free goods. Barbara Ormsby also made certain job related expenditures for which she was not reimbursed by Delta.

During the relevant period, Ormand Ormsby owned and operated a financial consulting business, the experience of which was reflected on Schedule C to taxpayers' federal income tax return. In addition, Ormand Ormsby was the CEO and manager of United Recycling, Inc. (United Recycling), a corporation in which he owned all of the voting common shares. Others owned nonvoting shares in that corporation.

Every two weeks during the relevant period, United Recycling issued to Ormand Ormsby a payroll check in the amount of $1,200 minus withholdings. As CEO and manager of United Recycling, Ormand Ormsby knew, at the time he received each check, whether the corporation had sufficient funds to honor the check. Ormand Ormsby did not cash a number of checks that he believed United Recycling could not

honor. Taxpayers deducted the amount of those checks from their gross income on their 1996 and 1997 personal income tax returns.

Ormand Ormsby made a number of purchases that he claimed were either for his financial consulting business or for United Recycling. Taxpayers offered copies of canceled checks that they contended were issued for those businesses. Taxpayers also indicated that they commingled business expenditures with personal expenditures. Taxpayers did not provide any receipts or other evidence that might indicate whether the particular expenditures were attributable to business or personal purposes.

Taxpayers owned two pieces of real property, one wholly in Clackamas County and one partially in Clackamas County and partially in Multnomah County. During the relevant period, taxpayers made a number of payments to those counties and deducted the amount of those payments as an itemized deduction on their Schedule A to their federal income tax returns. Taxpayers also paid deductible mortgage interest.

During the 1996 and 1997 personal income tax years, taxpayers took other itemized deductions on Schedule A of their federal return for personal property tax paid and for charitable contributions.

Taxpayers claimed Schedule C deductions of $119,863 and $61,853 in the 1996 and 1997 personal income tax years, respectively. The auditor disallowed most of those deductions. At trial, the parties litigated the Schedule C deductions line by line. Taxpayers focused their attention on specific Schedule C deductions for which they believed they had proper legal bases and for which they believed they had proper substantiation.

Taxpayers also claimed their daughter, Brianna Ormsby, as a dependent in the 1996 and 1997 personal income tax years. In 1997, Brianna Ormsby filed a personal income tax return in which she claimed a personal exemption deduction for herself.

In the Magistrate Division, the parties litigated the issues presented in this case, along with other issues that

taxpayers subsequently abandoned. The magistrate affirmed most of the conclusions of the auditor, but modified some of the auditor's positions related to taxpayers' claims. Taxpayers appealed to this division with respect to both the conclusions of the auditor and the decision of the magistrate to this division.

Taxpayers came to trial with a number of boxes of apparently unorganized records. Over the course of a two-day trial, taxpayers consumed a large amount of their time searching through their documents in an effort to substantiate their claims.

## III.   ISSUES

A.   May taxpayers make adjustments to their 1996 and 1997 personal income for income attributable to the sale of duty free goods and for uncashed payroll checks?

B.   May taxpayers take Schedule A itemized deductions on their 1996 and 1997 personal income tax returns for property tax and mortgage interest payments, charitable contributions, and job related expenditures?

C.   May taxpayers make Schedule C deductions for the 1996 personal income tax year?

D.   May taxpayers make Schedule C deductions for the 1997 personal income tax year?

E.   May taxpayers take a personal exemption deduction for their daughter, Brianna Ormsby, for the 1996 and 1997 personal income tax years?

F.   What amount of self-employment taxes may taxpayers deduct for the 1996 and 1997 personal income tax years?

G.   May taxpayers seek relief from interest and penalties related to their 1996 and 1997 personal income tax returns?

H.   May either party claim reasonable attorney fees and expenses?

I.   May the department claim damages from taxpayers?

## IV.   ANALYSIS

■■   At issue in this case are taxpayers' personal income tax returns for 1996 and 1997. The Oregon legislature intended to make Oregon personal income tax law identical to the Internal Revenue Code (IRC) for purposes of determining taxable income, subject only to modifications specified in Oregon law. ORS 316.007.[1] As a result, the legislature adopted by reference the federal definitions and code sections relevant to the various personal income tax issues in this case. Unless otherwise noted, the parties agree as to the code sections applicable to this dispute. Most tax items in dispute in this case relate to substantiation. Taxpayers, as the appealing party, bear the burden of proof. ORS 305.427.

In their second amended complaint, taxpayers allege seven claims for relief. Claims one through five relate to taxpayers' personal state income tax returns for the tax years of 1996 and 1997. In their sixth claim, taxpayers request that the court rule in their favor and that the court remove any penalties and interest imposed by the department. In their seventh claim taxpayers request that this court award them reasonable costs, expenses, and professional fees.

In its Answer, the department requests that the court issue an order affirming the department's assessments or, in the alternative, issue an order consistent with the magistrate's decision. The department also requests attorney fees, costs, and disbursements. Finally, the department requests that the court award damages to the department pursuant to ORS 305.437.

### A.   *Taxpayers' First Claim for Relief:   Income Adjustments*

Taxpayers request that the court adjust their gross income as follows: (1) a reduction of $344 for the sale of duty free goods in 1996; and (2) reductions of $5,728.68 and $2,868.59 in the 1996 and 1997 personal income tax years, respectively, for the amount of uncashed payroll checks that Ormand Ormsby received from United Recycling.

---

[1] All references to the Oregon Revised Statutes (ORS) are to 1995 unless otherwise noted.

### 1. *Duty Free Goods*

The record indicates that the state auditor increased Barbara Ormsby's income for 1996 by $344 "from sale of commissioned items from Delta Airlines in-flight duty-free items." The magistrate found that Delta had reported $493 in commission sales on Barbara Ormsby's 1996 federal W-2 wage and tax statement (W-2) and that Barbara Ormsby had $344 in commissions in the 1997 personal income tax year. At trial, the department agreed to eliminate the auditor's $344 assessment for the 1996 personal income tax year because that amount had been included in Barbara Ormsby's W-2. On the basis of that concession, therefore, the court concludes that taxpayers' income shall be reduced by $344 for the 1996 personal income tax year.

### 2. *Uncashed Payroll Checks*

Taxpayers claimed a reduction in their gross income for the 1996 and 1997 personal income tax years for uncashed payroll checks that United Recycle issued to Ormand Ormsby. Taxpayers claim that Ormand Ormsby received, but did not cash, checks in the amounts of $5,728.68 in 1996 and $2,868.59 in 1997. The department contends that taxpayers constructively received those amounts as income and that no reduction from gross income is therefore appropriate.

As a threshold matter, the court is unable to substantiate the amounts that taxpayers claim are at issue for the 1996 personal income tax year. Taxpayers entered into evidence photocopies of seven payroll checks issued by United Recycling to Ormand Ormsby in 1996, each with a gross amount of $1,200, for a total of $8,400. The net amount of those checks totals $6,683.90. Those amounts do not reconcile with taxpayers' claimed amounts and taxpayers did not explain that discrepancy. As to the 1997 personal income tax year, taxpayers submitted three checks totaling a gross amount of $3,600 and a net amount of $2,868.59.

Taxpayers assert that they understood they had three options as to the uncashed payroll checks: (1) report the uncashed payroll checks to the payroll preparation company and instruct it to issue revised W-2s; (2) forward copies of the

uncashed payroll checks along with a cover letter to the department explaining the basis for not including the amount of those checks in gross income; and (3) include the amount of the checks in income as wages and report the uncollected checks as a bad debt on Schedule A of their income tax returns if such checks were not collectible. Taxpayers argue that, under any of those approaches, the amount of the uncashed payroll checks should not be included in their gross income. Taxpayers have not offered any legal support for those propositions.

Although taxpayers allege that they had three available options, taxpayers apparently elected to pursue only the second option, forwarding a copy of the uncashed payroll checks along with a cover letter to the department. Both parties submitted tax returns purporting to be the Ormsby's personal income tax returns for 1996 and 1997 and neither set of returns contains such a cover letter and copies of uncashed payroll checks. Ormand Ormsby testified that he filed the appropriate letter with his personal income tax return. Although taxpayers understood that all trial exhibits must be exchanged in advance of trial, they did not exchange that letter with the department during discovery. The court sustained the department's objection to the introduction of any new evidence at trial.

The department contends that taxpayers constructively received as personal income the amount of all of the checks United Recycling issued to Ormand Ormsby, whether he did or did not cash those checks. Under IRC section 451(a), the "amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer, unless, under the method of accounting used in computing taxable income, such amount is to be properly accounted for as of a different period." Cash method taxpayers, such as the Ormsbys, must report income in the year it is actually or constructively received. Treas Reg § 1.451-1 (2004). In a case involving the receipt of a check, this court agrees with the position of the Eighth Circuit Court of Appeals, which has stated:

"A check in the hands of a taxpayer ordinarily means that funds are immediately available. Therefore, the general

rule is that a check constitutes taxable income to a cash-basis taxpayer *when received. See Avery v. Comm'r*, 292 US 210, 215 (1934); *Kahler v. Comm'r*, 18 TC 31 (1952). There are some common sense exceptions to this rule, such as when the payor may be insolvent, *see Lavery v. Comm'r*, 158 F2d 859, 860 (7th Cir 1946), or has imposed substantial restrictions or conditions that prevent the taxpayer from receiving funds, *see Bright v. United States*, 926 F2d 383, 386-87 (5th Cir 1991)."

*Walter v. United States*, 148 F3d 1027, 98-2 US Tax Cas (CCH) ¶ 50,546 (8th Cir 1998) (emphasis in original).

Taxpayers assert, by way of implication, that their situation falls into an exception, arguing that United Recycling's alleged precarious financial position throughout 1996 and 1997 "imposed substantial hardships or conditions that prevented taxpayer[s] from receiving funds." *Id*. Ormand Ormsby testified that the payroll checks were prepared and issued by a payroll company on a scheduled basis. He testified that, as CEO and manager of United Recycling, he knew whether United Recycling had sufficient funds in its checking account to honor the checks on the date that he received those checks. Ormand Orsmby further testified that on the date of receipt of each disputed check United Recycling had insufficient funds and that, therefore, he did not believe that he could cash those seven checks.

Ormand Ormsby testified on cross examination, however, that, with respect to at least the $1,200 payroll check dated May 17, 1996, United Recycling had sufficient funds in its account to honor the check at various times from May 1996 until at least 1999. In fact, Ormand Ormsby testified that he cashed many payroll checks after May 17, 1996. When asked if he could have cashed the May 17 check instead of one of the checks he later cashed, Ormand Ormsby stated that he could have cashed that check and that nothing was unique about the May 17 check. Ormand Ormsby also testified that he believed that United Recycling had sufficient funds available to pay the state and federal withholdings at the time the payroll company issued each of the uncashed payroll checks. Finally, taxpayers did not offer evidence from

United Recycling, such as financial statements or bank statements, that might substantiate that the corporation was unable to meet its obligations during 1996 and 1997.

On this record, the court finds that taxpayers have not met their burden of establishing that "substantial restrictions or conditions * * * prevented taxpayer[s] from receiving funds" when Ormand Ormsby received the payroll checks from United Recycling. *Id.* As cash method taxpayers, the Ormsbys were in constructive receipt of income as soon as Ormand Ormsby received the checks from United Recycling. The court also finds that no exception to that general constructive receipt rule applies here because taxpayers did not prove that United Recycling could not have honored the checks it issued to Ormand Ormsby.

The court concludes, therefore, that the record does not support taxpayers' assertion that the amount of the uncashed payroll checks should be excluded from gross income, and that taxpayers may not deduct the amount of the uncashed payroll checks from their gross income for the 1996 and 1997 personal income tax years.

B. *Taxpayers' Second Claim for Relief: Schedule A Expenses*

Taxpayers request that this court grant Schedule A deductions for property tax payments, mortgage interest payments, charitable contributions, and various unreimbursed job related expenses in the 1996 and 1997 personal income tax years for amounts greater than the department allowed on audit.

1. *1996 Property Tax*

In their second amended complaint, taxpayers allege that they paid deductible property taxes in the amount of $10,651 for the 1996 personal income tax year. In their trial memorandum and at trial, however, taxpayers asserted that they may claim only $5,078.64. The department contends that taxpayers may claim a deduction in the amount of $3,648.

Taxpayers submitted into evidence two property account financial histories for two properties they alleged that they own in Clackamas County. Those account histories

indicate that taxpayers paid a total of $3,364.40 to Clackamas County in 1996 for two property tax accounts. In addition, taxpayers submitted evidence indicating that they paid $283.19 to Multnomah County in 1996 for one property they allege is located in both Multnomah and Clackamas counties. The total of those three account histories equals $3,647.59, which, with allowable rounding off, is the amount the department concedes taxpayer may claim as a deduction for real property taxes paid on Schedule A.

Taxpayers have not articulated to the court, either at trial or in their written submissions, exactly how they came up with an additional $1,714.24. Taxpayers did allege that they made two payments to Clackamas County that are not reflected in the account histories they submitted into evidence. Those checks total $1,810.28. Taxpayers did not explain that discrepancy. Without regard to the discrepancy in amounts, taxpayers' proof as to the two alleged additional payments also fails for lack of substantiation for the following reasons.

First, taxpayers assert that they made a $300 payment to Clackamas County on May 28, 1996. That payment, however, is not reflected in the detailed account histories that taxpayers rely on to prove their other property tax payments to the county. Taxpayers submitted into evidence a carbon copy of the original check as evidence that they had made the alleged property tax payment. The court cannot verify from that copy whether taxpayers ever actually mailed the check to the county or whether the check was cashed. Taxpayers did not submit copies of bank statements or any form of verification that a check in that amount had cleared from their personal accounts. Barbara Ormsby testified at trial, however, that the payment may have been for a business tax payment related to United Recycling. In fact, the record contains many examples of taxpayers having made payments on behalf of United Recycling from their personal checking accounts throughout 1996 and 1997. On that record, therefore, the court finds that taxpayers have not met their burden of proof necessary to deduct the $300 check, dated May 28, 1996, as personal property taxes paid.

Second, taxpayers assert that they made a $1,510.28 payment to Clackamas County on November 8, 1996. That payment also is not reflected in the detailed account histories that taxpayers rely on to prove their other property tax payments to the county. That payment is also represented by a carbon copy unsupported by anything other than taxpayers' testimony. Moreover, the carbon copy does not contain the signature of either taxpayer. Taxpayers could not explain why the check was not signed. On this record, therefore, the court finds that taxpayers have not met their burden of proof necessary to deduct the $1,510.28 check dated November 8, 1996, from their Schedule A property taxes paid.

Based on the foregoing, the court concludes that taxpayers may claim $3,648 for real property taxes paid as a Schedule A itemized deduction for the 1996 personal income tax year.

### 2. *1997 Property Tax*

In their second amended complaint, taxpayers allege that they paid property taxes in the amount of $10,865 for the 1997 personal income tax year. In their trial memorandum and at trial, however, taxpayers conceded that they may only claim $3,268. The department agreed that taxpayers may claim a deduction in the amount of $3,268. At trial, the parties stipulated to that amount. Based on that agreement, the court concludes that taxpayers may claim $3,268 for real property taxes paid as a Schedule A itemized deduction for the 1997 personal income tax year.

### 3. *Mortgage Interest*

In their second amended complaint, taxpayers allege that they paid mortgage interest in the amount of $16,061 for the 1996 personal income tax year and $23,177 for the 1997 personal income tax year. In their trial memorandum, taxpayers alleged that they made mortgage interest payments of $18,571.79 and $16,471.44 for the 1996 and 1997 personal income tax years, respectively. At trial, however, the parties stipulated to figures of $18,914 for 1996 and $15,449 for

1997. Based on that stipulation, the court concludes that taxpayers may claim Schedule A itemized deductions for mortgage interest paid in the amounts of $18,914 for the 1996 personal income tax year and $15,449 for the 1997 personal income tax year.

### 4. *Personal Property Tax*

In their second amended complaint, taxpayers allege that they paid $25 for vehicle registration for a vehicle used in connection with taxpayers' business. Taxpayers did not prove in which personal income tax year they made that payment. Taxpayers made no argument and introduced no evidence at trial as to this item. The court concludes, therefore, that taxpayers may not deduct $25 for personal property tax paid as a Schedule A itemized deduction for either the 1996 or 1997 personal income tax years.

### 5. *Charitable Contributions*

In their second amended complaint, taxpayers allege that they made charitable contributions in the amounts of $1,928 for the 1996 personal income tax year and $1,991 for the 1997 personal income tax year. In their trial memorandum, taxpayers decreased those amounts to $1,576 and $1,680 for the 1996 and 1997 personal income tax years, respectively. At trial, however, the parties stipulated to $1,000 for both the 1996 and 1997 personal income tax years. Despite stipulating at trial to those amounts, in their summation brief taxpayers reasserted their right to claim $1,576 for the 1996 personal income tax year and $1,680 for the 1997 personal income tax year.

Taxpayers have not explained why this court should not enforce the stipulation made at trial. On this record, the court finds that $1,000 per year is a generous concession by the department. Taxpayers entered into evidence a number of documents related to charitable contributions, none of which substantiate the amounts taxpayers now seek to deduct as charitable contributions. Taxpayers submitted a spreadsheet entitled "Tabulation of Charitable Contributions 1996 and 1997." For 1996, that document indicates that taxpayers made $1,200.83 worth of payments to Riverdale School, Rolling Hills Community Church, and the Portland

Police Association. Of that amount, taxpayers labeled $565 under the heading "Confirmation Not Available." For 1997, the tabulation indicates that taxpayers made $1,305 to the school, church, and "One Voice Productions," $481 of which taxpayers indicated lacked confirmation.

In fact, the court finds that nearly all taxpayers' alleged charitable contributions lack confirmation. Taxpayers submitted into evidence a single check in the amount of $30 that had been endorsed and cashed by Rolling Hills Community Church in 1996. As with the property taxes, taxpayers provided carbon copies of checks as support for other charitable contributions. Taxpayers submitted carbon copies totaling $795.83 for 1996 and $823 for 1997. The only document offered to confirm that those checks had been received by any of the entities identified on the checks was a contribution statement from Rolling Hills Community Church dated January 18, 1998, indicating that the church had received two payments in 1997 totaling $150. Taxpayers did not submit any testimonial evidence as to charitable contributions because they had stipulated to an amount at trial.

Absent the trial stipulation by the parties, the court finds that taxpayers would only have met their burden of proof for charitable contributions of $30 in 1996 personal income tax year and $150 in 1997 personal income tax year. Taxpayers' post-trial argument appears to have been in bad faith and, given the benefit to them of the stipulation, was ill-advised. The department chose to ignore taxpayers' claims for increased charitable contribution deductions, however, and reaffirmed the parties' trial stipulation. On that basis only, therefore, the court concludes that taxpayers may deduct $1,000 for charitable contributions for each of the 1996 and 1997 personal income tax years.

### 6. *Barbara Ormsby's Job Related Expenses*

In their second amended complaint, taxpayers allege that Barbara Ormsby had unreimbursed job related expenses of $1,988 and $4,110 for the 1996 and 1997 personal income tax years, respectively. The auditor concluded that Barbara Ormsby could deduct $1,991 in 1996 and $1,225 in 1997. The department did not assert a specific position on Barbara Ormsby's job related expenses prior to trial. Despite

the auditor's willingness to increase Barbara Ormsby's job related expense deduction from $1,988 to $1,991 for the 1996 personal income tax year, the parties stipulated at trial to an amount of $1,988. On the basis of that stipulation, the court concludes that taxpayers may deduct $1,988 for Barbara Ormsby's Schedule A job related expenses for the 1996 personal income tax year, subject to the applicable limits under federal law.

At trial, the parties could not reach an agreement as to the deductibility of Barbara Ormsby's alleged job related expenses for the 1997 personal income tax year. At trial, the parties litigated Barbara Ormsby's job related expenses in three separate categories of expenses: (1) unreimbursed meal expenses; (2) uniform expenses; and (3) miscellaneous expenses.

### a. Unreimbursed Meal Expenses

Taxpayers claimed a total of $3,464 for unreimbursed meal expenses for Barbara Ormsby on their 1997 form 2106-EZ. The department asserted that, on the basis of one of taxpayers' own exhibits, a total of $2,649 of that amount had been reimbursed by Delta. Taxpayers did not submit any evidence from which the court could discern how they arrived at an additional $815. The department was willing, however, to offer to permit taxpayers a deduction for the additional $815. On the basis of that offer alone, therefore, the court concludes that taxpayers may deduct $815 for unreimbursed meal expenses as a Schedule A deduction on their 1997 personal income tax return.

### b. Uniform Expenses

Taxpayers claimed $352 for uniform expenses for Barbara Ormsby on their 1997 form 2106-EZ. In support of their deduction, taxpayers submitted a copy of Delta's in-flight service manual, which outlines mandatory attire requirements, and a low-resolution photograph of Barbara Ormsby's flight attendant gear. Taxpayers did not produce any evidence, however, that they actually made any expenditures during 1997 for that gear. In fact, Barbara Ormsby testified that she may have purchased one item, a topcoat she valued at around $200, in 1996.

■    Despite the lack of substantiation, and testimony indicating that a portion of the expenditures occurred in a different income tax year, taxpayers ask this court to follow the approach of the court in *Douglas v. Commissioner*, 38 TCM (CCH) 901 (1979). *Douglas*, however, reveals the fatal flaw in taxpayers' claim for a deduction for uniform expenses. One of the taxpayer's alleged expenses in *Douglas* was for fingernail care. In denying that expense, the court stated, "the record does not give us any basis for determining the * * * amount (if any) that Kathleen expended for cosmetics as a consequence of her employer's requirements. Applying the analogy of the rules governing deductibility of items constituting work uniforms, we feel that on the record herein we must sustain respondent's determination * * *." *Id*. at 902-03. The court, therefore, disallowed the deduction on the basis that the taxpayers lacked substantiation of those expenditures. Substantiation of the expenditures is where taxpayers fail here as well. Taxpayers have not placed into evidence sufficient proof of purchase, price, or time of purchase of the expenditures they wish to deduct.

On this record, the court finds that taxpayers have not met their burden of proof as to the deductibility of Barbara Ormsby's uniform expenses. The court concludes, therefore, that taxpayers may not take a deduction for Barbara Ormsby's uniform expenses on their 1997 Schedule A.

### c.    Miscellaneous Expenses

Taxpayers claimed $294 for miscellaneous expenses for Barbara Ormsby on their 1997 form 2106-EZ. In support of their deduction, taxpayers asserted that Delta required Barbara Ormsby to communicate via the Internet using a program called "Widget Works." Taxpayers alleged Widget Works cost about $11 per month and that they also had to contract with an Internet Service Provider (ISP) for about $20 per month in order to facilitate the communication. Taxpayers conceded, however, that the ISP could be used for purposes other than to connect Widget Works to the Internet.

Taxpayers did not submit any evidence necessary to prove that they made those alleged payments. Despite the lack of substantiation, the department was willing to accept

that taxpayers had made the $11 monthly payments for Widget Works, for a total deduction of $132 for the 1997 personal income tax year. On the basis of that concession only, therefore, the court concludes that taxpayers may deduct $132 for miscellaneous expenses on their 1997 Schedule A.

### 7. *Ormand Ormsby's Job Related Expenses*

In their second amended complaint, taxpayers allege that Ormand Ormsby had unreimbursed job related expenses of $4,800 for the 1997 personal income tax year. Taxpayers conceded that their 1997 Schedule A indicated that they had improperly taken a $9,600 deduction for Ormand Ormsby's unreimbursed job related expenses because of a computational error that duplicated the actual figure of $4,800. The auditor concluded, and the department contended at trial, that taxpayers' reduced amount of $4,800 was actually a duplicate deduction for the $4,800 worth of uncashed payroll checks Ormand Ormsby had already improperly deducted from gross income for the same tax year. Essentially, therefore, the department argued that taxpayers had improperly taken a $4,800 deduction three times on the same income tax return.

At trial, taxpayers asserted that the $4,800 was not attributable to the uncashed payroll checks; rather, taxpayers alleged that Ormand Ormsby had unreimbursed expenses related to United Recycling. As a threshold matter, once again the court is unable to reconcile the amount alleged by taxpayers with the evidence they offered at trial. Taxpayers submitted documentary evidence equaling $5,208.96 for expenses they allege were not reimbursed by United Recycling. Taxpayers broke that amount into three categories. Although the department alleged that deductions for all of those expenditures should be denied because they were contributions to capital of United Recycling, the court need not reach that issue.[2] Even if the court were to accept taxpayers'

---

[2] The department argues that many alleged expenditures and payments taxpayers made to or on behalf of United Recycling were capital contributions. In this opinion, the court never addresses that argument because taxpayers have failed in each instance to offer proof necessary to establish that they may deduct those alleged expenditures or payments. The reasoning in this opinion should not be read to indicate that the department's argument was incorrect.

position on the deductibility of those expenditures, as a matter of law, the court finds that taxpayers have not met their burden of proof necessary for each of the three categories of expenses.

First, taxpayers submitted a carbon copy of a check dated February 10, 1997, written from Barbara Ormsby's account to the order of Ormand Ormsby. The handwritten term "U/R" appears on the bottom left corner of the duplicate check. Taxpayers testified that Barbara Ormsby wrote that check to cover the purchase of items for United Recycling, such as ladders, uniforms, and parts for a plant vehicle. Taxpayers did not submit, however, any evidence that such purchases were ever made or that the total of those alleged expenditures totaled exactly $3,000. On that basis, the court finds that taxpayers have not met their burden of proof necessary to establish that the $3,000 check that taxpayers allege Barbara Ormsby issued to Ormand Ormsby was for his job related expenses that were unreimbursed by United Recycling.

Second, taxpayers submitted a self-prepared spreadsheet listing 15 independent transactions at Costco totaling $1,595.55 that they allege were made wholly for the benefit of United Recycling. Taxpayers offered copies of checks totaling $1,058.67 that appear to have been cashed by Costco that correspond to nine of those transactions. Taxpayers did not submit receipts detailing any of those purchases. Moreover, taxpayers testified that it was not uncommon for them to commingle personal purchases or purchases for Ormand Ormsby's financial consulting business with those for United Recycling. On this record, therefore, the court finds that taxpayers have not met their burden of proof necessary to establish that the $1,595.55 they allegedly spent at Costco for the benefit of United Recycling was in fact spent for United Recycling.

Third, taxpayers submitted canceled checks totaling $640.36 that they allege were also written to various businesses for the benefit of United Recycling. Once again, taxpayers failed to offer detailed receipts. In addition, taxpayers did not offer any testimonial evidence as to why Ormand Ormsby issued those checks. On this record, therefore, the

court finds that taxpayers have not met their burden of proof necessary to establish that the $613.41 they allegedly spent at a number of retail establishments was in fact spent for the benefit of United Recycling.

Based on the foregoing, the court finds that taxpayers have not met their burden necessary to prove that Ormand Ormsby had any unreimbursed job expenses in the 1997 personal income tax year. The court concludes, therefore, that taxpayers may not deduct unreimbursed job expenses allegedly attributable to Ormand Ormsby on their 1997 Schedule A.

C. *Taxpayers' Third Claim For Relief: 1996 Schedule C Expenses*

In their second amended complaint, taxpayers asserted that they were entitled to deductions for Schedule C expenses attributable to Ormand Ormsby's financial consulting business in the amount of $119,863 for the 1996 personal income tax year. In particular, taxpayers specified amounts they claimed for automobile, equipment lease, legal and professional, and depreciation expenses. The auditor determined that taxpayers could take deductions in the amount of $16,402 on their Schedule C and denied the remaining amount of $103,461. At the outset of trial, the department reserved its position as to whether it would accept or reject the auditor's conclusions as to the deductibility of each individual Schedule C line item. At trial, therefore, the parties litigated Schedule C line by line.

1. *Lines 8, Advertising; and 15, Insurance*

On their 1996 Schedule C, taxpayers claimed the following: (1) $264 for advertising on line 8; and (2) $84 for insurance on line 15. Both at audit and at trial, the department contended that taxpayers may not claim any Schedule C deduction for advertising because taxpayers could not offer substantiation for the expense. Although not litigated by either party at trial, the auditor found that taxpayers could not substantiate the insurance expense deductions taxpayers made on line 15 of their 1996 Schedule C. Taxpayers did not provide any evidence as to the validity of either of those

expenses. On this record, the court finds that taxpayers have not met their burden of proof as to the advertising and insurance expenses that they claimed on their 1996 Schedule C. The court concludes, therefore, that taxpayers may not take deductions for advertising expenses on line 8 and insurance expenses on line 15 of their 1996 Schedule C.

### 2. *Line 10, Car and Truck Expenses*

In their second amended complaint, taxpayers allege that they have deductible automobile expenses in the amount of $7,450. In their trial memorandum, taxpayers reduced that amount to $4,003. At trial, the parties stipulated to a Schedule C, line 10, deduction for automobile expenses in the amount of $2,002. The parties did not elaborate, and the record does not indicate, how the parties came to that mutually agreed on figure.

Despite that apparent stipulation on the record, taxpayers, in their summation brief, inexplicably renewed their claim for an automobile expense deduction in the amount of $4,003. From the record, the court cannot discern any basis from which taxpayers could properly assert that they are entitled to $4,003 for automobile expenses on Schedule C for 1996. Taxpayers did not introduce any evidence that indicates they had any deductible automobile expenses during 1996. In fact, the only reference to automobile expenses is the $7,450 taxpayers claimed on their Schedule C—a figure they had already abandoned in their pretrial brief.

The department, however, did introduce evidence indicating that the department auditor had concluded that taxpayers could deduct as much as $4,956 for automobile expenses for 1996. Taxpayers have not asserted that the reasoning underlying that determination is still valid. Moreover, the department stated at the outset of the trial that it reserved its position on all matters related to this case, regardless of the position taken by the auditor or the decision of the magistrate in the previous proceeding. As to deductible automobile expenses, the department maintained that the agreed on figure of $2,002 was the appropriate amount. On this record, the court cannot find any reason to disturb the agreement the parties stipulated to at trial in favor of the

unsupported position advocated by taxpayers in their summation brief. The court concludes, therefore, that taxpayers may claim $2,002 for automobile expenses on Schedule C, line 10, of their 1996 personal income tax return.

### 3. *Line 11, Commissions and Fees*

On their 1996 Schedule C, line 11, taxpayers purported to claim a deduction for commissions and fees. The deduction was stated as a negative number, which the court concludes would result in an addition to income. At trial, taxpayers testified that they did not know what that amount was for and that they could not substantiate it. The auditor was also unable to substantiate that amount and therefore reduced the deduction, or inclusion in this case, to $0. The department did not have a position on this matter at trial. On this record, the court finds that neither taxpayers nor the department has shown that taxpayers must include $155 for commissions and fees into the expense portion—*i.e.*, a reduction of taxpayers' overall deduction—of Schedule C for 1996. The court concludes, therefore, that taxpayers may claim $0 for commissions and fees on line 11 of their 1996 Schedule C.

### 4. *Line 13, Depreciation*

On their 1996 Schedule C, line 13, taxpayers deducted $11,735 for depreciation. The auditor found and accepted $3,551 for depreciation of business equipment associated with Ormand Ormsby's financial consulting business. At trial, the department offered an additional $717 for depreciation related to the use of Ormand Ormsby's vehicle in connection with that business, for a total of $4,268. After unsuccessfully attempting to determine the basis or bases for the additional $7,467 worth of depreciation, taxpayers agreed to accept $4,268 as the correct figure. On the basis of that agreement, the court concludes that they may claim $4,268 for depreciation on line 13 of their 1996 Schedule C.

### 5. *Line 17, Legal and Professional Services*

On their 1996 Schedule C, line 17, taxpayers deducted $54,882 for legal and professional services. In their second amended complaint, taxpayers divided that amount into two categories: (1) a loan to United Recycling for $50,000 in 1996; and (2) legal and professional expenses of $4,882 in

1996. In their trial memorandum, taxpayers stated that "the loan expense of $50,000 for 1997 * * * should be reflected in the 1996 Schedule C at $53,900 resulting in an adjustment or combining of claims." At trial, however, taxpayers asserted that they claimed the following under line 17: (1) $51,900 for loans to United Recycling; and (2) $4,882 for legal and professional expenses.

### a. Loans to United Recycling

Taxpayers offered three canceled checks written from Ormand Ormsby's account to United Recycling totaling $51,900. Taxpayers did not present any legal basis, however, for claiming those payments to United Recycling as a legal or professional expense of Ormand Ormsby's financial consulting business. In fact, no legal basis exists under which taxpayers could claim those payments on line 17 of their 1996 Schedule C. For that reason alone, the court concludes that taxpayers may not deduct the $51,900 they paid to United Recycling on line 17 of their 1996 Schedule C.

By way of implication, taxpayers asserted at trial that they should be able to claim some form of a deduction for the $51,900 he transferred to United Recycling out of his account because he never received a payment from United Recycling in return. Essentially, taxpayers argued that they should be able to deduct the total as a bad debt. In support of their argument, taxpayers rely on *Artstein v. Commissioner*, 29 TCM (CCH) 961 (1970). Taxpayers' reliance on *Artstein* is flawed for a number of reasons, the most important of which is found in the excerpt they quoted in their trial summation brief. That excerpt states that a "taxpayer's payment is not treated as a worthless debt until the year in which the right of subrogation or other similar right becomes totally worthless, or partially worthless in the case of an agreement that arose in the course of the taxpayer's trade or business." Here the record illustrates that United Recycling operated well into 1999, and perhaps as long as 2000. Moreover, Ormand Ormsby testified that he received payroll checks from United Recycling that he was able to cash through the end of 1997. The court concludes, therefore, that even if the payments to United Recycling could be classified as a loan, and on this record the court finds that taxpayers have not met their burden

of proof as to that contention, taxpayers may not properly deduct those payments as a bad debt or as a Schedule C deduction in either the 1996 or the 1997 personal income tax years.

### b. Legal and Professional Fees

Although taxpayers allege that they had $4,882 worth of legal and professional fees in 1996, they submitted into evidence only one canceled check totaling $2,436.40, which they alleged was for legal fees. When questioned as to why taxpayers made that payment, however, Ormand Ormsby testified that he paid Leonard D. DuBoff (DuBoff) $2,436.40 in satisfaction of debts he owed in conjunction with the rental of office space and equipment. Ormand Ormsby conceded that, although DuBoff is an attorney, the payment was not for legal services. Taxpayers did not offer any other evidence of payments for legal or professional fees. The court finds that taxpayers have not met their burden necessary to prove that they made any legal or professional fee payments during the 1996 personal income tax year. On this record, therefore, the court concludes that taxpayers may not claim any deduction for legal and professional fees on line 17 of their 1996 Schedule C.

### 6. *Line 18, Office Expense*

On their 1996 Schedule C, line 18, taxpayers claimed $1,147 for office expense. The auditor concluded that taxpayers could only claim $356 as office expenses under line 18, primarily due to lack of substantiation and because taxpayers had duplicated expenses in this category with expenses they had taken in other categories. At trial, taxpayers did not dispute the auditor's conclusion with respect to office expenses. The court concludes, therefore, that taxpayers may claim $356 for office expenses on line 18 of their 1996 Schedule C.

### 7. *Lines 20a, Vehicle, Machinery, and Equipment Rent or Lease; and 16, Other Interest*

On their 1996 Schedule C, line 20a, and in their second amended complaint taxpayers claimed $18,128 for other

vehicle, machinery, and equipment rent or lease payments. In their pretrial memorandum, however, taxpayers reduced that amount to $10,617. At trial, Ormand Ormsby testified that the amounts were attributable to two pieces of equipment that he had purchased and leased to United Recycling. When asked why he had reduced the amount taxpayers initially claimed on their 1996 Schedule C, Ormand Ormsby testified that he only intended to include the interest portion of the payment as a deduction. Ormand Ormsby also testified that United Recycling had made a number of the payments, but he did not indicate whether he had reduced the amount of interest he deducted by the amount of those payments. Moreover, Ormand Ormsby testified that the portion of the depreciation taxpayers abandoned in arriving at their agreement on depreciation expense under line 13 of taxpayers' 1996 Schedule C was actually depreciation on the equipment; thus, taxpayers had claimed double deductions for the same item.

After a discussion with the department, taxpayers conceded that the $10,617 was not attributable to equipment purchase or lease. Taxpayers then asserted that they should be allowed to deduct the amount on line 16b, other interest, of their 1996 Schedule C. At trial and in its summation brief, the department contended that the best solution is to consider the leases as if they had been transactions between United Recycling and the equipment sellers. Under that arrangement Ormand Ormsby would presumably only have been a guarantor and would not have been able to claim any deductions related to the leases during 1996 and 1997. Moreover, taxpayers would not have had to include any payments from United Recycling to Ormand Ormsby in their 1996 personal income. For their part, taxpayers maintained their position that the arrangement was a valid lease between Ormand Ormsby and United Recycling for which taxpayers may claim Schedule C deductions.

The court agrees with the department. On this record, the court finds that taxpayers have not met their burden necessary to prove that a lease actually existed between Ormand Ormsby and United Recycling for property owned by Ormand Ormsby. Taxpayers submitted two documents purporting to be sales agreements between Ormand Ormsby and

two equipment sellers. Although one document does in fact list Ormand Ormsby as the "Buyer (Debtor)," the other document is nearly illegible. Taxpayers did not submit any lease agreement between taxpayers and United Recycling.

Perhaps most damaging to taxpayers' position, however, was the testimony of Ormand Ormsby, who testified that he only "cosigned" for the equipment because the seller would not sell directly to United Recycling. Ormand Ormsby indicated that he merely acted as a guarantor and that he intended for United Recycling to make all the payments. In fact, Ormsby testified that United Recycling made ten of the payments for one of the pieces of equipment in 1996. Ormand Ormsby also testified that United Recycling made the down payment for that piece of equipment.

Finally, the auditor's report as to the lease arrangements between Ormand Ormsby and United Recycling also includes information damaging to taxpayers' position. For example, the auditor found that under the purported lease, United Recycling would make estimated payments to taxpayers in the amount of $64,576.80 over the life of the purported lease, for a piece of equipment with a purchase price of $8,595.00.

Based on this record, the court finds that taxpayers have not met their burden of proof to establish that a valid lease existed between Ormand Ormsby and United Recycling. The court also finds that the substance of the transactions between Ormand Ormsby, United Recycling, and the equipment sellers indicated that Ormand Ormsby acted as a guarantor for United Recycling. As a result, the court concludes that taxpayers may not make any 1996 Schedule C deductions for the purported lease arrangements between Ormand Ormsby and United Recycling. Nor are taxpayers required to include rental receipts from the transactions, although, in fact, they did not do so on their 1996 federal income tax return.

8. *Line 20b, Other Business Property Rent or Lease*

On their 1996 Schedule C, line 20b, taxpayers claimed $4,594 for other business property rent or lease payments. The auditor concluded, however, that taxpayers could

actually deduct $6,130, a net increase of $1,536. Despite that apparent positive result, taxpayers argued at trial that they could only deduct $4,594. The department reserved its position at trial, pending the admission of evidence by taxpayers. Taxpayers admitted into evidence seven cancelled checks totaling $3,694. The department was willing to stipulate to that amount.

Ormand Ormsby testified that he had made three additional rent payments to his mother in the amount of $300 each for an additional total of $900. On the basis of that testimony, taxpayers asserted that they should be permitted to deduct $4,594. Other than Ormand Ormsby's testimony, however, taxpayers did not submit any proof of a rental agreement between Ormand Ormsby and his mother, such as a receipt, verifying that Ormand Ormsby's mother received the alleged cash payments or a copy of a rental agreement.

The record indicates that some form of purported rental arrangement existed between Ormand Ormsby and his mother in which Ormand Ormsby rented space to temporarily house his financial consulting business. Of the substantiated amount of $3,694 that the department accepted as payments for rent, $900 of that amount was for three $300 payments Ormand Ormsby made to his mother. One check dated July 8, 1996, states in the "memo" field that the check is payment of "Rent, 7/96." Another check, dated September 28, 1996, states that it is in payment of "Rent: August 1996." The other check is dated November 21, 1996, and it merely states that it is for "Rent."

The court finds, however, that the record does not conclusively establish what type of rental arrangement Ormand Ormsby had with his mother. On one hand, the record could demonstrate that Ormand Ormsby paid rent monthly and that he made payments for September, October, and December by cash. On the other hand, the record could demonstrate that Ormand Ormsby rented from his mother on an as needed basis. As to the additional $900 rent that taxpayers allege they paid by cash, therefore, the court finds that taxpayers have not met their burden necessary to prove that those payments were ever made.

Although taxpayers may not claim the additional $900 cash payment as rent expense, that does not necessarily mean that taxpayers may only deduct the $3,694 that the department was willing to stipulate to at trial. As discussed above, taxpayers did pay DuBoff $2,436.40 on December 17, 1996, for payment in satisfaction of a lease obligation. The auditor properly attributed that amount to office rental expense in computing a rental expense figure of $6,130 for 1996. The court concludes, therefore, that taxpayers may deduct $6,130.40 for office rent expense on line 20b of their 1996 Schedule C.

### 9. *Line 21, Repairs and Maintenance*

On their 1996 Schedule C, line 21, taxpayers claimed $2,073 for repairs and maintenance. The auditor disallowed that deduction because of lack of substantiation for the expenditures. At trial, taxpayers did not offer any evidence to substantiate those expenditures. On this record, therefore, the court concludes that taxpayers may not claim any deduction for repairs and maintenance on line 21 of their 1996 Schedule C.

### 10. *Line 22, Supplies*

On their 1996 Schedule C, line 22, taxpayers claimed $3,114 for supplies. The auditor concluded that taxpayers could not substantiate the actual expenditures and, therefore, denied any deduction for supplies. At trial taxpayers submitted a number of canceled checks into evidence. Ormand Ormsby testified that those expenditures fell into one of three categories: (1) expenses commingled between United Recycling and Ormand Ormsby's financial consulting business; (2) solely Ormand Ormsby's financial consulting business expenses; and (3) solely United Recycling expenses.

### a. Commingled Expenses

In support of their claimed deduction for supplies, taxpayers submitted copies of canceled checks issued to Deluxe Checks and to Costco. Ormand Ormsby testified that those checks representing commingled expenditures were attributable to his personal business and to United Recycling. Ormand Ormsby estimated that 10 percent of the expenditures were directly related to his personal business.

Taxpayers did not offer any substantiation for the expenditures.

In the case of the check issued to Deluxe Checks, the "memo" field indicates that the check was for "Biz Checks." Ormand Ormsby did not indicate which business the checks were attributable to, if in fact the expenditure was only for either his personal business or United Recycling. As to the checks taxpayers issued to Costco, none of those checks indicate for what they were issued. Taxpayers testified that they made various purchases at Costco, including personal expenditures. On this record, the court could just as easily find that taxpayers issued those checks for taxpayers' household expenditures as it could find that they were for one of Ormand Ormsby's business endeavors. On that basis, the court finds that taxpayers have not met their burden necessary to prove that they made the alleged commingled expenditures solely for business purposes. The court concludes, therefore, that taxpayers may not deduct any of the alleged commingled expenditures as a supply expense on line 22 of their 1996 Schedule C.

> b. Expenditures Solely for Ormand Ormsby's Personal Business

Taxpayers submitted into evidence three canceled checks that they allege were issued for software and program updates for Ormand Ormsby's financial consulting business. Ormand Ormsby testified that each of the expenditures was for his business, but was unable to provide any substantiation in the form of a receipt or other documentation. The court cannot discern from the record what those expenditures were for or whether they were used solely for Ormand Ormsby's personal business. Taxpayers admitted in their summation brief, however, that Ormand Ormsby only used one computer system for both family personal and personal business purposes, arguing that the maintenance of two systems would have been "counterproductive." On the basis of that admission and on the record as a whole, the court finds that taxpayers have not met their burden necessary to prove that the alleged supply expenditures were in fact made for Ormand Ormsby's personal business. The court concludes, therefore, that taxpayers may not deduct any of the alleged

personal business expenditures as a supply expense on line 22 of their 1996 Schedule C.

### c.   Expenditures Solely for United Recycling

Taxpayers submitted into evidence a number of canceled checks that they allege Ormand Ormsby issued for supplies for United Recycling. The department contends that, to the extent those expenditures were intended for United Recycling, taxpayers may not deduct them as an expense of Ormand Ormsby's business. Moreover, the department contends that those expenditures should be classified as contributions to the capital of United Recycling by Ormand Ormsby, a shareholder in that corporation. The court does not have to address the department's arguments, however, because even assuming that the expenditures were potentially deductible, the court nonetheless finds that taxpayers have not met their burden of proof.

Taxpayers assert that the canceled checks represent expenditures made by Ormand Ormsby on behalf of United Recycling. All but one of those checks were issued to Home Depot and G.I. Joe's—the same companies and the same types of checks for which taxpayers previously claimed as an unreimbursed job related expense for Ormand Ormsby. Taxpayers did not explain why one seemingly arbitrary group of checks issued to those companies should be treated as unreimbursed job related expenses whereas another seemingly arbitrary group of checks should be treated as a Schedule C deduction. Nonetheless, the court finds that mere copies of canceled checks cannot satisfy taxpayers' burden of proof absent some substantiation, such as store receipts, that would indicate that those expenditures were attributable to a legitimate business outlay.

Similarly, the court finds that the sole remaining check also lacks substantiation. That check was paid to the order of United Creditors Alliance and was signed by a representative of United Creditors Alliance as an authorized signatory for Ormand Ormsby. Taxpayers testified that the check was to be paid to Metro Machinery for an expense attributable to United Recycling. Taxpayers did not indicate what that expense was for nor did they provide any additional documentation that would link that check to either

United Recycling or Metro Machinery. Based on this record, therefore, the court concludes that taxpayers may not deduct any of the alleged United Recycling expenditures as a supply expense on line 22 of their 1996 Schedule C.

### 11. *Line 24a, Travel*

On their 1996 Schedule C, line 24a, taxpayers claimed $2,320 for travel. The auditor concluded that taxpayers could not substantiate the actual expenditures; therefore, the auditor denied any deduction for travel. At trial, Ormand Ormsby testified that he had made two trips to San Francisco, California, for business related purposes. Taxpayers did not submit any evidence, however, that substantiates Ormand Ormsby's testimony.

■ Taxpayers have not met their burden of proof necessary to claim a deduction for travel expenses. Ormand Ormsby merely testified that he made two trips. He did not testify as to how he spent $2,320 on those trips. The record contains no information about plane fares, car rental, or hotel expenditures. Moreover, the record does not contain any substantiation that a trip or trips actually occurred or that the trips had a business purpose. *See* 26 USC § 274(d) (substantiation required). On this record, therefore, the court concludes that taxpayers may not make a deduction for travel on line 24a of their 1996 Schedule C.

### 12. *Line 24b, Meals and Entertainment*

On their 1996 Schedule C, line 24b, taxpayers claimed $564 for meals and entertainment. The auditor concluded that taxpayers could only substantiate $178 worth of meals and entertainment expenses after applying the 50% limitation. Taxpayers did not submit any admissible evidence, including testimonial evidence, from which the court could find that taxpayers made any deductible meals and entertainment expenditures. Despite that lack of evidence, the department nonetheless offered to accept a deduction in the amount of $178. On the basis of that concession only, the court concludes that taxpayers may deduct $178 for meals and entertainment expenses on line 24b of their 1996 Schedule C.

### 13. *Line 25, Utilities*

On their 1996 Schedule C, line 25, taxpayers claimed a deduction in the amount of $3,714 for utilities. Despite limited substantiation from taxpayers, the auditor concluded that taxpayers could deduct $1,080 for utilities. Although the department characterized the auditor's calculation as "arbitrary," the department did not take a specific position as to the deductibility of utility expense on taxpayers' 1996 Schedule C.

At trial, taxpayers reasserted their right to deduct $3,714 for utility expenses. In support of that assertion, taxpayers submitted into evidence copies of canceled checks issued to U.S. West Communications and to Nentel totaling $5,047.94. Ormand Ormsby testified, however, that those payments included payments for taxpayers' home telephone and home fax machine. Moreover, Ormand Ormsby testified that some of the Nentel payments were attributable to phones used in part or wholly by or for United Recycling. Taxpayers did not submit any substantiation for those payments, such as copies of bills from U.S. West and Nentel, from which the court could discern what part, if any, was attributable specifically to Ormand Ormsby's financial consulting business or to United Recycling.

On this record, taxpayers have not met their burden necessary to prove the amount of utility expense specifically attributable to Ormand Ormsby's financial consulting business. The department did not expressly deny, however, that the auditor was at fault for allowing $1,080 for telephone expenses during 1996. On the record as a whole, therefore, the court concludes that taxpayers may deduct $1,080 for utility expenses on line 25 of their 1996 Schedule C.

### 14. *Line 26, Wages*

On their 1996 Schedule C, line 26, taxpayers claimed $4,788 for wages. The auditor concluded that taxpayers could not substantiate the actual expenditures; therefore, the auditor denied any deduction for wages. At trial, Ormand Ormsby testified that he had improperly received $4,770 for having acted as a conservator and had been advised by his

attorney to return the money. On the basis of that recommendation, Ormand Ormsby testified that he "backed out" that income by issuing a Form 1096 from his financial consulting business for that amount. Taxpayers did not offer any substantiation for that transaction. Even assuming the legitimacy of such a transaction and ignoring the fact that the dollar amounts involved do not reconcile, the court finds that taxpayers have not met their burden necessary to prove that they had legitimate wage expense, a payment for services of an employee, in 1996. Based on the record, therefore, the court concludes that taxpayers may not take a wage deduction on line 26 of their 1996 Schedule C.

### 15. *Line 27, Other Expenses*

On their 1996 Schedule C, line 27, taxpayers claimed $5,131 for other expenses. At audit, the auditor concluded that taxpayers could deduct only $151 worth of expenses apparently related to Ormand Ormsby's use of Pitney Bowes equipment. The department did not expressly deny that the auditor was at fault for allowing $151 for Ormand Ormsby's use of that equipment during the 1996 personal income tax year.

At trial, taxpayers submitted into evidence two canceled checks totaling $400, which were issued to the Multnomah Athletic Club (MAC). Ormand Ormsby testified that he deducted $1,993 for the MAC payments, but he could not establish why those were other expenses of his financial consulting business. In fact, he testified that he went to the MAC on doctor's orders to attend to his personal health.

Taxpayers did not offer any other evidence from which the court could find that taxpayers can meet their burden of proof as to other expenses. The department did not expressly deny, however, that the auditor was at fault for allowing $151 for Ormand Ormsby's use of Pitney Bowes equipment during 1996. On the record as a whole, therefore, the court concludes that taxpayers may deduct $151 for other expenses on line 27 of their 1996 Schedule C.

D. *Taxpayers' Third Claim for Relief: 1997 Schedule C Expenses*

In their second amended complaint, taxpayers asserted that they were entitled to deductions for Schedule C expenses attributable to Ormand Ormsby's financial consulting business in the amount of $61,853 for the 1997 personal income tax year. In particular, taxpayers specified amounts they claimed for automobile expenses, equipment lease expenses, loans to United Recycling, legal and professional expenses, and depreciation expenses. The auditor determined that taxpayers could take Schedule C deductions in the amount of $6,412 and denied the remaining $55,441 for a variety of reasons. At the outset of trial, the department reserved its position as to whether it would accept or reject the auditor's conclusions as to the deductibility of each individual Schedule C line item. At trial, therefore, the parties litigated Schedule C line by line.

### 1. *Line 10, Car and Truck Expenses*

As with vehicle expenses in 1996, discussed above, the parties agreed at trial to a deduction in the amount of $569. Despite taxpayers' desire to abandon that agreement in their summation brief, the court finds no basis in the record to disturb the parties' agreement. The court concludes, therefore, that taxpayers may deduct $569 for vehicle expenses on line 10 of their 1997 Schedule C.

### 2. *Lines 8, Advertising; 11, Commissions and Fees; 15, Insurance; 17, Legal and Professional Services; 21, Repairs and Maintenance; 22, Supplies; 24, Travel, Meals and Entertainment; 25, Utilities; and 27, Other Expenses*

Although taxpayers generally alleged in their second amended complaint that they wished to challenge the auditor's conclusion as to deductions taken for advertising, commission and fees, insurance, legal and professional services, repairs and maintenance, supplies, travel, meals and entertainment, utilities, and other expenses, taxpayers did not offer any evidence from which the court could find that the auditor was incorrect. Similarly, although the department

initially announced its intention to reserve its position as to all Schedule C deductions, the department did not expressly disavow any of the auditor's conclusions. On this record, therefore, the court concludes that no changes shall be made to the auditor's position as to the following 1997 Schedule C deductions: line 8, advertising; line 11, commissions and fees; line 15, insurance; line 17, legal and professional services; line 21, repairs and maintenance; line 22, supplies; line 24, travel, meals and entertainment; line 25, utilities; and line 27, other expenses.

### 3.  *Line 13, Depreciation*

On their 1997 Schedule C, line 13, taxpayers deducted $11,917 for depreciation. The auditor found and accepted $665 for depreciation of business equipment associated with Ormand Ormsby's financial consulting business. At trial, the department offered an additional $737 for depreciation related to the use of Ormand Ormsby's vehicle in connection with that business, for a total amount of deductible depreciation of $1,402. Taxpayers could not provide a legitimate basis for deducting the additional $10,515 worth of depreciation. Testimony related to the alleged leases between Ormand Ormsby and United Recycling indicated that the additional depreciation was most likely attributable to those leases.

Despite having agreed to an amount for 1996 depreciation, taxpayers and the department did not stipulate to an amount for 1997. The court finds that taxpayers have not submitted the evidence to satisfy their burden of proof necessary to justify an increased depreciation deduction. On this record, therefore, the court concludes that taxpayers may claim $1,402 for depreciation on line 13 of their 1997 Schedule C.

### 4.  *Lines 16b, Other Interest; 20a, Vehicle, Machinery, and Equipment Rent or Lease*

On their 1997 Schedule C, line 16b, taxpayers deducted $0 for other interest and on line 20a, taxpayers deducted $13,779 for vehicle, machinery, and equipment rent or lease. In their trial memo, taxpayers reduced that latter

figure to $5,252. At trial, however, taxpayers asserted that the $5,252 should be claimed under line 16b, other interest, and that they should not have made a deduction on line 20a, vehicle, machinery, and equipment rent or lease. As noted in the above discussion related to 1996 Schedule C deductions, the court finds that no valid lease existed between Ormand Ormsby and United Recycling and that he stood, at most, as a guarantor of an obligation of United Recycling. As a result, the court concludes that taxpayers may not make any Schedule C adjustments—*e.g.*, deductions for interest or depreciation—for the purported lease arrangements between Ormand Ormsby and United Recycling on their 1997 Schedule C. Nor are taxpayers required to include rental receipts from the transactions, although, in fact, they did not do so on their 1997 federal income tax return.

### 5. *Line 18, Office Expense*

On their 1997 Schedule C, line 18, taxpayers claimed $12,772 for office expense. The auditor concluded that taxpayers may only claim $219 for office expense. At trial, taxpayers submitted into evidence a number of canceled checks, which they purported to be payments for office supplies. Taxpayers did not submit any substantiation, such as receipts, from which the court could determine for what purpose, or for what business, taxpayers had made the payments. On this record, the court finds that taxpayers have not met their burden necessary to prove that they made the payments for deductible office expenses. The court concludes, therefore, that taxpayers may deduct $219 for office expense on line 18 of their 1997 Schedule C.

### E. *Taxpayers' Fourth Claim for Relief: Dependent Deduction*

In their second amended complaint, taxpayers asserted that they were entitled to claim a personal exemption deduction for their daughter, Brianna Ormsby, apparently for both the 1996 and 1997 personal income tax years. The department concedes that taxpayers may take a personal exemption for Brianna Ormsby for the 1996 personal income tax year. During the first day of trial, the department

alerted taxpayers to the fact that Brianna Ormsby had filed a personal income tax return in 1997, in which she claimed for herself her personal exemption. After reviewing that information, taxpayers abandoned their personal exemption claim as to Brianna Ormsby for the 1997 personal income tax year. Based on the foregoing, the court concludes that taxpayers may only claim a personal exemption deduction for Brianna Ormsby for the 1996 personal income tax year.

F.   *Taxpayers' Fifth Claim for Relief: Deduction For One-Half of Self-Employment Taxes Imposed*

In their second amended complaint, taxpayers assert that the court should vacate the department's assessment of additional self-employment taxes in the amounts of $3,788 and $2,223 for the 1996 and 1997 personal income tax years, respectively. In fact, the department did not assess additional self-employment taxes; rather, the department granted taxpayers deductions for one-half of the self-employment taxes taxpayers would have been imposed after properly computing taxpayers self-employment income. *See* 26 USC § 164(f)(1). The department contends, therefore, that the court should set the amount of the deduction for one-half of self-employment taxes commensurate with the actual amount of self-employment income derived as a result of the court's conclusions in this case. The court agrees with the department. The court concludes, therefore, that taxpayers' may deduct one-half of the self-employment taxes for the 1996 and 1997 personal income tax years that would have been imposed pursuant to 26 USC section 1401 based on the self-employment income derived from the results of this opinion. *Id*.

G.   *Taxpayers' Sixth Claim for Relief: Interest and Penalties*

In their second amended complaint, taxpayers assert that the court should vacate the department's assessment of interest and penalties in this case. The department contends that interest is a function of the actual tax due and that an award of penalties is mandated by law in cases in which a taxpayer understates personal income by $15,000. The department is correct.

As to interest, to the extent that taxpayers are in arrears as a result of this decision, interest shall be added to the recomputed tax bill taxpayers owe. As to penalties, ORS 314.402(1) states that,

> "If the [department] determines that there is a substantial understatement of taxable income for any taxable year under any law imposing a tax on or measured by net income, *there shall be added* to the amount of tax required to be shown on the return *a penalty equal to 20 percent* of the amount of underpayment of tax attributable to the understatement of taxable income."

(Emphasis added.) That statute goes on to define a "substantial understatement" as an understatement of income by $15,000. ORS 314.402(2). Those statutory provisions are mandatory. Here the court has found that taxpayers' 1996 and 1997 personal income, just from improper Schedule C deductions alone, was overstated by at least $15,000, without any corresponding decreases to taxpayers' gross income. The court concludes, therefore, that a penalty in the amount of 20 percent of the amount of the underpayment of tax attributable to the understatement of taxable income shall be assessed against taxpayers.

H.  *Attorney Fees*

■       Both parties claimed an award of reasonable fees and expenses. Under ORS 305.490(2), the court may award reasonable attorney fees and expenses to a taxpayer only if the court awards a refund claimed by the taxpayer, or if the court denies wholly or in part an additional assessment of taxes claimed by the department. Neither of those events occurred in this case. First, the court has not granted a refund to taxpayers. Second, although the department did make limited concessions and agreements in this case, those concessions and agreements are not equivalent to the court denying additional assessment of taxes claimed by the department. Indeed, those concessions and agreement removed from this court consideration of certain items the parties initially disputed. The court concludes, therefore, that taxpayers may not recover any expenses or fees.

The department's claim for reasonable attorney fees arises under ORS 20.105. Under that statute, the court may award reasonable attorney fees to the department if the department is the prevailing party upon a finding that the appealing party, in this case taxpayers, has presented claims, defenses, or grounds for appeal that lack a reasonably objective basis. ORS 20.105(1). This court has recently stated that, "to determine whether taxpayer has acted in an objectively unreasonable fashion, [the] court considers whether taxpayer's claims were entirely devoid of legal or factual support based on the substantive law governing the claims at the time [the taxpayer] proceeded in this division." *Patton I v. Dept. of Rev.*, 18 OTR 111 (2004). In making its determination, the court may consider the entire record available to the court, including the decision of the magistrate. *Id.*

In their second amended complaint, taxpayers made seven claims for relief. Of those, three claims—a deduction for one-half of self-employment taxes imposed, interest and penalties, and reasonable fee—were dependent on the outcome of the four substantive tax claims. Within those four substantive claims, the court has made rulings as to at least three dozen independent personal income tax items or categories of items.

The court has found that the vast majority of those claims must be denied because taxpayers have not met their burden of proof by failing to offer proper substantiation. Taxpayers have been on notice since the audit that they must provide substantiation for their claims. The auditor sent taxpayers a 19-page audit summary that made many references to the need of substantiation. Moreover, the magistrate also made several references to the lack of substantiation. Despite those warnings, taxpayers appealed many alleged reductions in income and deductions to this division without proper substantiation. For those items that taxpayers appealed without proper substantiation, especially in light of the fact that the auditor and the magistrate had warned taxpayers of the need to produce substantiation, the court finds that those claims were made without an objectively reasonable basis. The court notes that the majority of the department's attorney fees may have been expended defending those issues and that most of the time at trial was dedicated to taxpayers' attempts to

search through a number of apparently disorganized boxes of records.

██ ██ Taxpayers and the department made a number of agreements at trial. In some, but not all, of those agreements, taxpayers reduced their claims in order to secure an agreement. In some cases the parties agreed to an amount at or below the amount that the auditor or magistrate had determined to be appropriate. Moreover, despite agreement on at least two disputed tax issues, taxpayers inexplicably asserted that the court should award a higher deduction amount. The court finds, therefore, that in cases in which the parties agreed to a deduction or reduction in income in excess of the auditor's conclusion or the magistrate's decision, taxpayers are not required to pay reasonable attorney fees associated with those items. The court further finds that, in cases in which the agreement between the parties resulted in a reduction in the amount of a deduction, taxpayers shall pay reasonable attorney fees to the department. Finally, in cases in which taxpayers inexplicably sought to disavow a stipulation in their summation brief, taxpayers shall pay reasonable attorney fees that the department expended in its post-trial briefing in order to defend against a groundless position.

## I. *Damages*

██ ██ The department requested an award of damages should the court determine that taxpayers' positions are frivolous or groundless under ORS 305.437. A "frivolous position" is one that lacks a reasonably objective basis. ORS 305.437. Having made a limited award of reasonable attorney fees to the department, the court has concluded that a number of taxpayers' positions were without an objectively reasonable basis.

The court notes that taxpayers made numerous and substantial computational errors that were almost always in their favor. Taxpayers also made highly suspect misclassifications of certain deductions and income reductions. For example, taxpayers apparently reduced their 1997 taxable income by nearly $15,000 by taking as a deduction from or reduction to income the same $4,800 amount for which they

were unable to substantiate. When asked to clarify their position on that issue, taxpayers first conceded that they had made at least one computational error that resulted in an improper $4,800 deduction. Taxpayers then attempted to justify another $4,800 worth of deductions by offering a seemingly arbitrary group of cancelled checks.

The court finds that most of taxpayers' positions are without objectively reasonable basis in fact or law and that the record raises serious doubts about taxpayers' good faith in proceeding with their appeal to this division. Under ORS 305.437, therefore, the court shall award damages to the department in an amount of $1,000.

## V.   CONCLUSION

Based on the foregoing reasons, the court concludes that taxpayers' personal income tax returns for the 1996 and 1997 personal income tax years shall be adjusted in accordance with the findings and conclusions of this opinion. Now, therefore,

IT IS THE DECISION OF THE COURT that taxpayers' personal income for the 1996 and 1997 personal income tax years shall be adjusted in accordance with the conclusions in this opinion;

IT IS FURTHER DECIDED that taxpayers' Schedule A and Schedule C itemized deductions and inclusions for the 1996 and 1997 personal income tax years shall be determined in accordance with this opinion;

IT IS FURTHER DECIDED that taxpayers may take a personal exemption for their daughter, Brianna Ormsby, for the 1996 personal income tax year only;

IT IS FURTHER DECIDED that taxpayers' deduction for one-half of self-employment taxes imposed shall be computed in accordance with the conclusions in this opinion;

IT IS FURTHER DECIDED that taxpayers shall pay interest and penalties in accordance with the conclusions in this opinion;

IT IS FURTHER DECIDED that taxpayers shall pay reasonable attorney fees in accordance with the conclusions of this opinion; and

IT IS FURTHER DECIDED that taxpayers shall pay damages to the department in the amount of $1,000.

Costs to Defendant.